## Shafer's Appeal.

1. As between partners themselves, real estate may be shown to be firm property, notwithstanding the title be in one of them only, or in them all as tenants in common, and although the property was not paid for with firm money. It is a question of intention, and that intention may be shown by parol and manifested by the acts and declarations of the parties.

2. But it does not follow that real estate used for partnership purposes is partnership property. A contrary presumption prevails when the title is not in the firm; and to rebut that presumption it must appear, either that the property was paid for with the firm's money, or was by agreement actually brought into the common stock.

3. Even where real estate is brought into the common stock by agreement, it is within the power of the partners to withdraw it and reconvert into the separate property of the individual partners. Such a reconversion would be binding as between the partners themselves, and, in the absence of fraud, upon their joint and respective creditors.

4. A., B., C. and D. were partners as railroad contractors under the firm name of A., B., C. & Co. B., who owned a slate quarry, conveyed four undivided fifth parts thereof to his co-partners in their individual names as tenants in common, no mention of the firm being made in the deed, and there being no evidence that firm assets paid for the quarry, which was worked by the firm but under the name of A., B., C., E. & Co. The accounts were kept in the firm books, but separately from the railroad contracts. There was evidence of an agreement, at the time the quarry was purchased, that it should be considered firm property. The quarry was sold, subsequently, and a judgment note to A., B., C. and D., individually, taken in payment. This judgment was then sold, the purchaser giving his notes to A., B. and C., individually, therefor, D. having previously assigned his share to A. These notes were finally paid to B., or his representatives, and after his death A. claimed his share of the proceeds thereof from B.'s estate. The latter's administrators defended, on the ground that the quarry was firm property and its sale a partnership transaction, and that A.'s share could only be

10 OUTERBRIDGE— 4

determined on a final settlement of the partnership accounts, which the Orphans' Court had no jurisdiction to make.

*Held,* that although the quarry may have been partnership property while it was held and worked by the firm, yet when it was sold and ceased to be used for partnership purposes, the proceeds were withdrawn from the common stock and became separate property; that this could be fairly inferred from the acts of the partners subsequent to the sale; and therefore that the Orphans' Court had jurisdiction to ascertain the amount of A.'s claim, which must be paid in full out of the fund in the hands of the administrators.

*Held further,* that an allowance of $200 additional compensation to the administrators for defending this claim was properly refused.

March 14, 1884.　Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Northampton county.* Of January Term, 1884, No. 46.

This was an appeal by Benjamin Shafer and Joseph B. Shafer, administrators of Joseph Shafer, deceased, from a decree of said court sustaining exceptions to the report of an auditor, appointed to audit the account of said administrators and make distribution of the fund in their hands.

· By deed, dated February 9, 1866, Joseph Shafer, the deceased, being then seised of a tract of land, on which there was a slate quarry, conveyed an undivided four-fifths interest therein to Thomas Beck, Nathan Hall and Stephen Shafer, as tenants in common in fee simple.　At the date of the deed all the parties to it, including the grantor, were partners in the construction of several divisions of railroad track for the Lehigh Coal and Navigation Co., under the firm name of Beck, Shafer, Hall & Co.　On March 16, 1869, these parties sold and conveyed the quarry to Anton Frick for $8,000, the grantors accepting a judgment note for the purchase money in their individual names.　This judgment was afterwards sold and assigned to Wm. J. Benkert for $5,000, in payment for which Benkert gave his notes, payable at different times, to Joseph Shafer, Thomas Beck and Stephen Shafer, Nathan Hall having previously assigned his interest in the judgment to Thomas Beck.　These notes passed into the custody of Joseph Shafer, to whom Benkert paid $2,000; and after Joseph Shafer's death, on December 22, 1877, the balance was paid to his administrators.

. Before the auditor (C. M. Anstett, Esq.,) Beck claimed eight fifteenths of the sum of $5,000 paid by Benkert to Joseph Shafer, being four fifteenths in his own right and four fifteenths as the assignee of Nathan Hall's share.

The administrators resisted this claim on the ground that the deed from Joseph Shafer to the other members of the firm of Beck, Shafer, Hall & Co., although on its face purporting

to be to the grantees as tenants in common, was in fact a deed to the firm; that it was so understood at the time, and that the firm worked the quarry in addition to its other business. The administrators therefore contended that the subsequent sale of the quarry, and the disposition of the proceeds, were partnership transactions of the firm of Beck, Shafer, Hall & Co., and that the question whether Beck had any claim against Joseph Shafer's estate could only be determined by a settlement of the partnership accounts, which the Orphans' Court had no jurisdiction to make. They further alleged that upon settlement of the partnership account it would appear that Beck was largely indebted to Shafer's estate by reason of the Lehigh Coal and Navigation Company's contracts.

The business of the quarry was conducted in the firm name of Beck, Shafer, Hall, Harper & Co.; and the accounts of the two operations, although kept in the same books, were kept separately.

The auditor rejected Beck's claim against the estate, and also allowed the accountants $200 additional for contesting the same.

Exceptions filed to this report were sustained by the court, SCHUYLER, J., delivering the opinion, which was, inter alia, as follows:

" The title to the quarry was never in the firm. There is no evidence that it was paid for with the firm's money. The presumption is the other way, from the fact that the deed was made to the parties individually. True, it was agreed between the partners that the quarry should be considered as a firm asset, but this made it so only in a modified way. Neither member of the firm could have sold it so as to pass a good title, as he could have done with the other assets of the firm. Even the firm could not sell it. Moreover, the purchase of the quarry and the working of it were entirely foreign to the objects in view when the firm was originally organized. The two kinds of business were in their very nature so distinct that it would be impossible to unite them. Accordingly we find—the auditor to the contrary notwitstanding—that the accounts were kept separately, although in the same books, and to still further distinguish the two kinds of business done by the firm, that in reference to railroad construction was done under the firm name of Beck, Shafer, Hall & Co., whilst the slate quarrying parts of the business was carried on under the firm name of Beck, Shafer, Hall, Harper & Co. . . . . . As has been seen, the quarry never was a partnership asset, in the strict sense of the term. The partners agreed to treat it as such as long as it was to their interest so to do. Having

paid nothing for it, having no use for it, and no title to it, it became a matter of entire indifference to the firm what the real owners did with it. I take it, therefore, that the sale to Anton Frick was not only in form, but, in fact, an individual transaction. And so all the parties to the sale undoubtedly considered. Upon no other theory can we account for the fact that the judgment for the purchase money was given to the partners individually instead of to the firm, which is also true of the notes given by Mr. Benkert. Unless Joseph Shafer considered the sale of the quarry an individual matter, why did he, as the evidence shows he did, buy Stephen Shafer's interest in the judgment? If, then, all the parties in interest intended the transaction of the sale of the quarry as an individual transaction, who shall say that their intention shall not control? . . . . . Without further elaboration I think the auditor was clearly in error in holding that he had no jurisdiction of Mr. Beck's claim. This disposes of the first exception, which is accordingly sustained. It is conceded that this court has no jurisdiction over the accounts of Beck, Shafer, Hall & Co. Upon a final settlement of those accounts Beck may fall heavily in debt to Joseph Shafer, but we have no means of determining the facts. It must be treated, therefore, as having no existence. . . . . . The last exception is that the auditor erred in allowing additional compensation to accountants. The sum allowed is $200 for contesting of Mr. Beck's claim. My opinion is that the contests should never have been made, and this exception is sustained."

The court accordingly entered a decree allowing Beck's claim in full, but rejecting the accountants' claim for $200 additional compensation. Whereupon the administrators took this appeal, assigning for error the decree of the court sustaining said exceptions.

*W. S. Kirkpatrick*, for appellants.—Beck, Hall and the two Shafers were partners in the matter of the railroad construction under the name of Beck, Shafer, Hall & Co. In 1865 or 1866 they extended their operations to the working of a slate quarry and making of slate. It was the same partnership, and was simply a case of a firm extending their business so as to embrace another branch. These facts are established by undisputed evidence before the auditor. The name Harper was added to the firm in the slate operations for the purpose of adding notoriety to the enterprise, for the reason that he was strongly identified with the slate interests in that locality. He had no connection with the firm, and neither shared in the contribution of capital nor in the division of profits. It appears from the testimony of the only witness who was

examined on the subject that the slate property conveyed to Joseph Shafer was brought into the firm as partnership property, and by express agreement between the partners was considered a part of the firm assets, to be taken into the account upon an adjustment of its affairs. Real estate, as between partners, may be shown by parol, to be firm property and personal, subject to an account, notwithstanding the deed may be to one or more, or to all, as tenants in common: Abbott's Appeal, 14 Wright, 234; Lacy *v.* Hall, 1 Wright, 360; Clark's Appeal, 22 P. F. S., 142; Moderwell *v.* Mullison, 9 Harris, 257; McDermot *v.* Laurence, 7 S. & R., 441; Erwin's Appeal, 3 Wright, 535. It is only as to third parties and creditors that the understanding and purpose must be expressed in the deed or in writing, with notice to such third parties or creditors: Holt's Appeal, 2 Out., 271; Geddes' Appeal, 3 Norris, 482; Ebbert's Appeal, 20 P. F. S., 79. If, therefore, the Shafer quarry was part of the capital and subject to an accounting between the partners, then its proceeds, if sold by any member of the firm, or by all, would also be part of the partnership settlement and involved in any account between them. The Orphans' Court has not jurisdiction to entertain a claim by a partner of the decedent against the estate of the latter arising out of partnership transactions: Ainey's Appeal, 2 Pennypacker, 192; see same case reported in 11 W. N. C., 568. Beck, as a creditor, had no standing to except to the allowance of additional compensation to accountants for defending claims. The heirs and distributees, who were the only parties interested, made no objection.

*W. Mutchler*, for appellees.—The quarry was conveyed to the original grantees as tenants in common; there was no conveyance by the individual members of the firm to the partnership, and no testimony to show that the purchase money was firm assets. It was subsequently conveyed to Frick, and a judgment for the purchase money taken payable to the grantors individually. This judgment was sold to Benkert, and notes to three members of the firm individually taken in payment; and finally, the quarry was operated under a different firm name from the original transactions. It is clear, therefore, that it was not partnership property: Grubb's Appeal, 16 P. F. S., 117; Geddes' Appeal, 3 Norris, 482; Laufer *v.* Cavett, 6 Norris, 479. But even if it should be conceded that the slate quarry was partnership property and an asset of the firm of Beck, Shafer, Hall & Co., it by no means follows that the Benkert notes were such. If they ever were firm assets they certainly lost that character when they became the property of but two members of the firm, by the

transfer of the interest, to them, of the other members of the firm. Beck and the other surety signed the exception to allowing additional compensation to the accountants for contesting claims, as sureties on the administration bond, believing the accountants to be insolvent, and fearing that they would be responsible to creditors of the estate for deficiencies.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

From the year 1864 to 1867, Thomas Beck, Joseph Shaffer, Nathan Hall and Stephen Shaffer were associated as partners, doing business under the name and style of Beck, Shaffer, Hall & Co., and were engaged in the construction of several sections of the lower division of the railroad of the Lehigh Coal and Navigation Company. On the 9th February, 1866, Joseph Shaffer, who had title to a certain slate quarry, by deed conveyed four undivided fifth parts thereof to his said co-partners, as tenants in common. The quarry was subsequently sold, the proceeds passing into the hands of Joseph Shaffer or his representatives. The claim of Thomas Beck, in this distribution, is for his share of the proceeds of that sale, also for the share of Nathan Hall, assigned to him. To the allowance of this claim it is objected, that the quarry was partnership property, that "it was purchased so that each was to have a share and to be owned by the same firm," and that if the parties so agreed, and the property was in fact brought into the partnership stock, it would be subject to the general account between the partners, as other firm assets; further, that the Orphans' Court having no jurisdiction to state the partnership accounts, the claim of Thomas Beck cannot be allowed.

The title was not obtained with the firm's money, nor is it in the firm's name; it was to the parties, individually; it contained, upon its face, no assertion that the lands or quarry was to be treated as partnership property. If the question were one affecting purchasers or lien creditors, this fact would be conclusive: Ridgway, Budd & Co.'s Appeal, 3 Harris, 177; Lancaster Bk. *v.* Myley, 1 Harris, 544; Lefevre's Appeal, 19 P. F. S., 122; Ebbert's Appeal, 20 P. F. S., 79; Holt's Appeal, 2 Out., 257; Nat. Bk's. Appeal, 2 Norris, 204; Geddes' Appeal, 3 Norris, 482. But as the case involves simply the relations of the partners to each other, in respect to the partnership property, it is evidential only as to their intent: Abbott's Appeal, 14 Wr., 238; Erwin's Appeal, 3 Wr., 535. As between partners themselves, real estate may in some cases be shown to be firm property, notwithstanding the title may be to one of them only, or to all in form as tenants in common.

*i*

As the slate quarry was not paid for with the firm's money, and the deed is not in the firm name, whether it shall be considered partnership property depends largely upon the intention of the partners; that intention may be shown by parol; it may be manifested in the acts and declarations of the parties. It is true, that from the date of the purchase, the quarry was actually operated by the firm, but it was operated by the firm under a different name, that of Beck, Shaffer, Hall, Harper & Co; the transactions of each operation although entered in the same books, were kept entirely distinct and separate from those of the other. It by no means follows, however, that real estate, used for partnership purposes, is partnership property. A contrary presumption prevails, when the title is not in the firm, and to rebut that presumption, it must appear either, that it was paid for with the firm money, or was by agreement actually brought into the common stock.

It is the testimony of one witness, that, at the time of the purchase, it was agreed, that the quarry should be partnership property; this may, perhaps, have been the intention of the parties at the time, but, in view of the admitted facts—that the title was taken in the individual names of the partners, for interests which do not correspond with their respective partnership shares; that these interests were never equalized, or made to conform with their rights under the partnership; that no conveyance was ever made to the firm; that the firm operations in the quarry were conducted under a different name, and were kept distinct from its other business, it is difficult to conclude that this design of the parties was ever consummated.

But, even if it be true, as alleged, that this slate quarry was by agreement brought into the common stock of the partnership, it was equally within the power of the partners to withdraw it, and to re-convert it into the separate property of the individual partners. Such a re-conversion would not only be binding, as between the partners themselves, but in the absence of fraud, upon their joint and respective several creditors.

The work of the quarry was abandoned on the 17th March, 1869, when the individual partners by a deed, in which they all joined, conveyed the lands and quarry to Anton Frick, accepting for the purchase money a judgment note, in their individual names, for $8,000. This note, the payees by an assignment, in which they likewise all joined, transferred to William J. Benkert; the share of Nathan Hall in this purchase money having been set over to Thomas Beck, Benkert gave to Thomas Beck, Joseph Shaffer and Stephen Shaffer his

own. notes for $5,000, covering the consideration of the assignment. The Benkert notes were afterwards paid; $2,000 thereof to Joseph Shaffer, in his lifetime, and $3,000 to his administrators, after his death. Joseph Shaffer died in the year 1877, and Stephen Shaffer afterwards transferred his interest in the Benkert notes to the administrators of his estate. Under these respective transfers, Beck is entitled to $\frac{8}{15}$, and Joseph Shaffer's estate to the remaining $\frac{7}{15}$, of the Benkert notes. None of the securities, representing the purchase money, in each of these several transactions, was taken in the name of the firm, in none of them, nor in the conveyance, is the property referred to as partnership property. Nathan Hall assigned his interest in this specific fund to Thomas Beck, and Stephen Shaffer assigned his to Joseph Shaffer's estate—all of the parties, therefore, have recognized the individuality of the fund; the transfer of a single asset is altogether inconsistent with its forming part of a common or partnership stock. Assuming therefore that during the continuance of the operations of the firm, the quarry may have been regarded as partnership property, can it be doubted that as soon as it was sold and ceased to be used for partnership purposes, the proceeds were withdrawn from that common stock? No express agreement to that effect has been shown, but from the acts of the partners, such an intention is fairly inferred; their conduct subsequent to the sale is inconsistent with any other supposition than that the purchase money was the individual estate of the partners. It is admitted, that the Benkert notes were received partly by Joseph Shaffer, in his lifetime, and partly by his administrators since his death, that the fund is in the accountant's hands and is embraced in the balance for distribution.

We are well satisfied that the claim of Thomas Beck is not involved in the general account of the firm of Beck, Shaffer, Hall & Co., and that the Orphans' Court has full jurisdiction to ascertain its amount, and direct its payment out of the fund for distribution.

We are of opinion also that the court was right in refusing to allow additional compensation to the accountants.

The decree is affirmed and appeal dismissed at the cost of the appellant.