EDWARD GREEN, Appellant, v. JAMES D. WHALEY, Administrator of Estate of DAVID J. GREEN.

Division One, July 16, 1917.

1. **SPECIAL FINDING: Equivalent to Special Verdict.** A special finding of facts by the court in a law case has the effect of a special verdict, and determines the case on appeal unless there was a failure of substantial evidence to support it.

2. **———: Theory of Trial Court: Declarations of Law.** The trial court's special finding of facts, with the general finding and judgment, are sufficient on appeal to indicate the theory of the trial court; but separate declarations of law are not only proper, but necessary when requested.

3. **PARTNERSHIPS: In Different Places and Businesses: Settlement.** The affairs of an earlier and entirely distinct partnership between the same parties cannot be settled in a proceeding concerning the affairs of a subsequent partnership in a different place, under different conditions.

4. **———: Agreement That Loan Notes Should Belong to Survivor: No Evidence of Settlement.** Edward and David Green deposited in a bank to the credit of "Green Brothers" over $12,000, which they loaned out in a month or two and took notes in the name of David secured by mortgages on real estate, among others the $8350 of notes involved in this action against David's administrator. The loans were made and the notes taken under an oral agreement that in case of the death of either the notes should be paid to the survivor, who should own and collect them; and in pursuance of that agreement the notes were indorsed by David and placed in his rented safety box in the bank, where they remained in the same condition until his death two years later. About the time the loans were made the brothers began a produce business as partners under the name of Green Brothers, and conducted it for one year, and then quit it, having in the bank at the time $1100, which was drawn out by check, and at the same time there was deposited $571.06 to the credit of Edward and $597.06 to the credit of David. The evidence shows only a settlement of the produce business; there is no proof of any division of the notes, and none that they arose out of or were connected with the produce business. *Held*, that a finding by the trial court that there was a division of the notes covered by the agreement is not sustained by the proof. Even if the money for which the notes were given was partnership funds, the agreement took them out of the operation of any partnership business and invested them with the character of joint property, in which each had an additional contingent interest.

5. ———: Intention: Agreement That Notes Shall Belong to Survivor. As between the parties, whether a partnership exists is a matter of intention. If they intend a joint enterprise to possess the characteristics of a partnership it is' such, whatever they may name it; otherwise, it is not a partnership, in so far as their relations to each other are concerned. An agreement between two brothers that certain property, owned jointly, should be the sole property of the survivor on the death of the other, with no sharing of loss or profits, was not a partnership.

6. ———: Conversion of Assets into Separate Property. It is within the power of partners to convert partnership property into separate property, either the individual or the joint property of the partners, and when they do so it is not, as between themselves, subject to any of the incidents of the partnership business.

7. ACCORD AND SATISFACTION: No Dispute. Accord and satisfaction occurs and is binding only when there is a well understood and executed agreement to settle or compromise all demands arising between the parties concerning which they have a dispute; and if there is no evidence of disputed claims or disagreement as to an amount coming to each, there was no accord and satisfaction.

8. ENFORCIBLE CONTRACT: That Joint Property Shall Belong to Survivor. An oral agreement between brothers that certain notes, payable to one of them but their joint property, should belong to the survivor upon the death of the other, is enforcible. It is not an attempted testamentary disposition of property, but is a present contract presently executed, supported by mutual promises, and not within the Statute of Frauds, because it concerns personal property only and may be fully performed within a year.

9. ———: Enforcement. Such contracts are usually enforced by a suit for specific performance, but an action at law against the administrator will lie where it affords a remedy, as in the case of a note made payable after the death of the maker.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt,* Judge.

REVERSED AND REMANDED.

*W. B. Skinner, Thomas Carlin* and *I. V. McPherson* for appellant.

(1) The conduct and admission of David J. Green at the very time the method of loaning the money was being agreed upon, and his statements, conduct and declarations while it was being loaned, conclusively

show that the fund belonged absolutely to Edward, and that David had no interest in it. There was therefore no evidence in support of the defendant's defense in this respect and the court erred in finding that the loans were made from their joint funds. Willoughby v. Hildreth, 182 Mo. App. 80; 30 Cyc. 42, 403-410; Gatewood v. Bolton, 48 Mo. 78; Boon v. Turner, 96 Mo. App. 635; Ashley v. Shaw, 82 Mo. 76; Chapin v. Cherry, 243 Mo. 375; Smith v. Shotliff, 169 Mo. App. 66; In re Swift, 118 Fed. 348; Mining Co. v. Swope, 204 Mo. 48; Spurlock v. Wilson, 160 Mo. App. 14. (2) The court erred in finding that a settlement and accounting were had between the plaintiff and the deceased of the notes and money sued for and in refusing plaintiff's declaration of law number 9. The defense of settlement and accounting of the transactions involved in this suit was an affirmative defense, in the nature of an accord and satisfaction. The burden was therefore on the defendant to allege and prove this defense. It is not enough that the brothers dissolved the partnership; it is not sufficient that they divided the balance on hand at the time in the partnership account, if it was a partnership account. They must have settled and adjusted these transactions. There was no showing that the loans were divided, or that a settlement of the loans was had. Therefore the court erred in finding there was a settlement and division and that the contract was rescinded and their object abandoned and in refusing plaintiff's declaration that there was no such evidence. Investment Co. v. Bernardon, 164 Mo. App. 384; Bank v. Stewart, 136 Mo. App. 34-35; Jones v. Rush, 156 Mo. 371; Trimble v. Railroad, 199 Mo. 44; Greenway v. James, 34 Mo. 326; Bahrenburg v. Fruit Co., 128 Mo. 526; Supply Co. v. Wolfe, 127 Mo. 616; B. & L. Assn. v. Barrett, 10 Mo. App. 177; Murphy v. D. & C. Co., 187 Mo. App. 577. The partnership, if one existed, was to conduct a produce business. The transactions in suit were outside and beyond the scope of that business, and a settlement and accounting of the partnership affairs would not include the

transactions in suit.  If there was such partnership, and if there were a settlement and adjustment of its affairs, proof of those facts would not prove the adjustment and settlement of these transactions outside and beyond its scope.  30 Cyc. 684; Burress v. Blair, 61 Mo. 133; Spurlock v. Wilson, 160 Mo. App. 14; Rushing v. Peoples, 42 Ark. 390; Price v. Hicks, 14 Fla. 565; Mining Co. v. Swope, 204 Mo. 48. ' The court found that there was a contract to draw money from the partnership account and loan it; take notes in David's name, to be endorsed and held by him in his safety deposit box in the bank; that each of said notes should belong to whichever of the brothers was the survivor.  This was a valid and binding contract and the declarations of law asserting that fact should have been given.  German v. Gilbert, 83 Mo. App. 412; Wilt v. Hammond, 179 Mo. App. 406; Stellwagen v. Grissom, 177 S. W. 636; Taylor v. Hudson, 145 Mo. App. 377; Sharkey v. McDermott, 91 Mo. 647; Wright v. Tinsley, 30 Mo. 389; Merrill v. Thompson, 252 Mo. 714; Clark v. Cordy, 69 Mo. App. 6; Gupton v. Gupton, 47 Mo. 37; Sutton v. Haydon, 62 Mo. 101; Wellington v. Apthorp, 145 Mass. 69.  (3) The court erred in refusing declaration of law number 8, requested by plaintiff.  This declaration affirmed that it made no difference under the contract found by the court to exist between the brothers, whether the money loaned belonged to the plaintiff alone or whether it belonged to a partnership of which they were both members.  Moss v. Green, 41 Mo. 390; Scribe v. Neeley, 130 Mo. App. 258; Perry v. Cooper, 8 Mo. 206; Harrington v. Neville, 83 Mo. App. 589; Hudson v. Browning, 264 Mo. 58; Weise v. Moore, 22 Mo. App. 530; Swinney v. Gouty, 83 Mo. App. 549; McCoy v. Hyatt, 80 Mo. 130.  Under the contract decedent's interest in each of the notes was sold to plaintiff for a valuable consideration upon a contingency; that is, upon the condition that he outlived David J. Green.  Hamilton v. Clark, 25 Mo. App. 429; Glass v. Brazer Bros., 91 Mo. App. 564.

*S. H. Lattimore, J. M. McPherson* and *W. Claud* for respondent.

(1) After having the court make special findings of facts, under Sec. 1972, R. S. 1909, separate from his conclusions of law, which need be but a general finding upon all the facts as found, the appellant has endeavored to have the court do the inconsistent thing of making declarations of law based upon a different and hypothetical state of facts. And such a course of procedure is expressly condemned by this court in the case of Kostuba v. Moeller, 137 Mo. 161, 38 S. W. 946. Clearly the respondent was entitled to a judgment in his favor upon the facts found by the court. It is incumbent then upon the appellant to overturn those findings of fact; and to do so in this court he must show that there was a complete failure of proof tending to support them. Williams v. Monroe, 125 Mo. 574; Sutter v. Raeder, 149 Mo. 297; Hamilton v. Boggess, 63 Mo. 233; Pitts v. Sheriff, 108 Mo. 110; Railroad v. News Co., 151 Mo. 373. A finding of the trial court on conflicting evidence is conclusive on appeal. Investment Co. v. Bernardon, 164 Mo. App. 384. (2) The opinion of this court in the former appeal recites that some $18,000 was deposited in Pierce City. That a partnership existed in the latter place is the only reasonable conclusion to be reached from the evidence. David came first to Pierce City and opened a personal account, going into business at the time. Later Edward arrived and the business of Green Brothers was opened up and continued for slightly over a year. On May 26, 1906, the funds in the bank were divided between the two; Green Brothers ceased operation; David retired; Edward continued in business in his own name for a time and then left Pierce City. Aside from the question of any arrangement or agreement between the brothers at the time the loans were made, the judgment must have been in favor of the respondent because of the finding of the court that prior to the death of David there was a settlement and adjustment not only of the

partnership but of all these matters now in dispute. And that finding is supported by the evidence.

WHITE, C.—This is the second appearance of this case in this court. The opinion on the former appeal was reported in 258 Mo. 530. The action was brought by Edward Green, in seven counts, to recover the proceeds of certain notes found among the papers and assets of his brother David J. Green on the latter's death, which notes the plaintiff claimed belonged to him by reason of an agreement made with his brother whereby said notes should become the property of the survivor of the two brothers on the death of the other.

On the former appeal this court held that a case was not made out for money had and received so as to sustain the petition as it then stood. After the cause was remanded the petition was amended to meet the objection which caused the reversal of the case.

The case was tried without a jury and the trial court, at the request of plaintiff, made and filed a finding of facts. Inasmuch as the appellant challenges the sufficiency of the evidence to support the finding in some particulars it will be necessary to give a full statement of the facts.

The plaintiff, Edward Green, and his brother, David J. Green, appeared in Pierce City, Missouri, in April, 1905. Whether the brothers came together or one came in advance of the other the evidence does not show. It does show that David J. Green opened an account with the Pierce City National Bank on April 7, 1905, by depositing $500 in his own name, and on May 11, 1905, $650 was deposited to the credit of Green Brothers. After that the following deposits were made to the credit of Green Brothers: July 3, 1905, $5,000; July 11, 1905, $2,000; August 9, 1905, $5,000. These deposits made in July and August were from cashier's checks of the First National Bank of Chicago. Soon after this money arrived Green Brothers began to lend it and made the following loans: August 15, 1905, to W. A. Winton, $1400; August 25, 1905, to W. F. Cagle,

271 Mo.—41

$2750; August 29, 1905, to George Denver Banks, $700; August 29, 1905, to John H. Banks, $700; September 7, 1905, to G. M. Ford, $800.

All these loans were secured by real estate, and the notes representing the same were collected and the money converted by the defendant, administrator of David J. Green; they are the subjects of the causes of action stated in the first, second, third, fourth, and fifth counts of the plaintiff's petition.

The sixth count of the petition alleges that the plaintiff furnished David J. Green $2000 to be loaned on farms in Barry County, on September 28, 1905, and that David J. Green invested $1000 of the money in land and took the title in his own name, and that the estate of David J. Green, therefore, owes the plaintiff the sum of one thousand dollars. The seventh count alleges that plaintiff furnished his brother $1000 to loan on real estate and the same was loaned by David J. Green to one John H. Elting, who executed his note therefor secured by real estate, and the administrator of the estate of David J. Green collected and converted the proceeds of the same.

The petition in each count alleges that the money representing these various transactions was the money of Edward Green; that there was an agreement between Edward Green and David J. Green that the loans mentioned should be made in such way that the notes would go to the survivor of the two on the death of the other; that accordingly the notes were made payable to David J. Green and by him endorsed and kept in a safety deposit box, so that in case of his death they would be the property of Edward, and in the case of the death of Edward they would be the property of David J.

About the time the Green Brothers opened their account at the Pierce City National Bank they began a produce business in Pierce City under the style of Green Brothers and conducted it about one year, until May 26, 1906, when they quit the business. Whether they sold it to someone else, or how the business was

closed, does not appear. At that time they had $1100 in the Pierce City National Bank and drew it out by check. At the same time there was deposited to the credit of Edward Green $571.06, and to the credit of David J. Green $597.06. Each brother had a separate account during the time they were carrying on this produce business and each of them had a personal safety deposit box in the bank. All checks drawn on the account of Green Brothers were written by Edward Green; none of them was written by David J. Green. After the closing of the partnership business on May 26th, Edward Green continued for a while buying eggs and poultry in his individual name, but soon after left Pierce City, while David J. Green remained there. David J. Green died in April, 1907, about eleven months after the business of Green Brothers in Pierce City was closed; the notes representing the loans above mentioned were found in his safety deposit box and were inventoried as a part of the assets of his estate by his executors. For some reason, the executors later quit their job and the defendant administrator took charge of the estate.

The answer of defendant among other defenses sets up that during the year 1905, and until May 26, 1906, Edward Green and David J. Green were partners; that their partnership was finally dissolved on the latter date and final settlement and accounting was had in which all matters and accounts between them were finally closed and settled. It does not allege that the notes mentioned went to David J. Green in that settlement.

The plaintiff introduced the depositions of several witnesses whose testimony was taken in Chicago. These deposition show that Edward Green went to Chicago in 1895, David J. Green going some time later; that Edward Green, upon arriving in Chicago, went into the shoe business, which was conducted for about ten years, until April, 1905, when he sold out and went to Pierce City. This business in Chicago seems to have been conducted all the time in the name of Green Brothers.

There was also carried on, part of the time while they were in Chicago, a commission business in the name of Green Brothers. It is shown in the depositions that Edward Green managed the shoe business, wrote all checks, employed help, claimed all the money that went into it, and when the business was sold out the purchase price was paid to him; that David J. Green made statements admitting he had no money and put none in the business. David J. Green was not consulted in the sale of the business, and all the transactions were conducted by Edward Green. These depositions further show that David Green was in poor health when he came there, embarked in business of his own at first, in which he failed, and afterwards continued with his brother in the shoe business. No testimony was offered by the defense to offset in any manner these statements.

The plaintiff introduced one Thomas Carlin, who was loan agent for Edward Green and made the loans mentioned above. He testified at length, explaining the manner in which the loans were made, and the agreement between the brothers made in his presence relating to the disposition of the notes. He said their purpose was to put the notes in such form that the survivor of the two would receive them on the death of the other, and discussed several methods by which that purpose might be carried out. At first they decided to make the notes payable to both or the survivor of the two. Through some misapprehension they wrote some of them payable to Edward Green and David Green or "the successor" of them. These were afterwards collected. Subsequently they changed the plan, adopting the one set out in the finding of the court.

The only evidence offered by the defendant in the case was the testimony of Otto E. Helweg, cashier of the Pierce City National Bank, who was one of the executors of David J. Green. He testified to the deposits shown by the records of the bank, as before set forth, the time when the brothers began business and ended it, and the facts in relation to the writing of the checks

as stated.    The trial court at the request of the plaintiff made the following finding of facts:

"The court sitting as a jury finds the facts to be, that plaintiff Edward Green and deceased David J. Green were co-partners in the city of Chicago, Illinois, during the years 1893 to 1905, in the commission business, and a retail shoe store.    In what proportion capital was invested by the brothers the court does not find, there being no substantial evidence to enlighten it. That the business was sold out in 1905 and David J. Green came to Pierce City, Missouri, early in 1905, opened a bank account in his own name and later engaged in the produce business with his brother Edward, who came to Pierce City in a short time; when the two brothers opened a bank account in the name of Green Brothers and did a produce business in the name of Green Brothers, till May 26, 1906, at which time they closed their bank account and divided the money, each depositing his portion of the money to his individual account when David J. retired from the produce business, which was carried on for a time by Edward Green, the plaintiff.

"That during the time this Green Bros. bank account was carried on the two brothers went to a loan agent (Thos. Carlin), and perhaps other loan agents in Pierce City, and had loans made in the name of David J. Green.    The loans made through the office of Thos. Carlin, and some at least made through other brokers, were made with the understanding between the brothers that in case of the death of either the notes should be paid to the survivor, who in such case should own and collect the notes, and that the sum of $2000 mentioned in the 6th count of plaintiff's petition was delivered to David J. Green to be loaned in the same manner, and that each of the notes described in plaintiff's petition was made with the above understanding between the brothers, and that all of the amounts above described were drawn out of the account of Green Brothers and evidenced by checks drawn on said account during the year 1905; that the understanding between the brothers

was that the notes taken in the name of David J. Green should be endorsed by David in blank at the time they were taken for the purpose of carrying out their understanding in case Edward was the survivor. That a part of said notes were collected by David J. Green during his lifetime and that one thousand dollars of the $2000 above mentioned was invested by said David in land in Barry County, and title taken in his individual name, and the other $1000 was loaned according to the understanding before mentioned. That all the above transactions occurred during the time that the bank account was kept in the name of Green Brothers, and that during this time and up to the time of David J. Green's death each of said Green Brothers had and kept in the bank at Pierce City a private safety deposit box and that David J. held in his possession the two keys belonging to his box and the bank held the master key to the same. That at the time of the death of David J. all uncollected notes above described and sued for in this action were found in the private box of David J. Green by his executors, who took charge of same as assets of his estate, and later turned them over to defendant as administrator. That later the defendant administrator collected the full amount of said notes and holds the same as assets of said estate, and defendant administrator denied plaintiff's interest in or title to the notes or the proceeds thereof.

"Ultimate facts found by the court is that a partnership existed between plaintiff and David Green during the time of the transactions, and that the same was fully adjusted and settled up by a division of the partnership assets on the 26th of May, 1906, and that David J. died in April, 1907, and that all matters regarding the notes and money sued for in this action were adjusted between the parties in the lifetime of David J. Green."

To this finding of the facts the plaintiff duly excepted upon the ground that there was no evidence to support some of the several facts found.

The trial court gave a number of declarations of law and refused a number which were presented by the plaintiff for the purpose of determining the court's theory of the case. A declaration was asked by plaintiff upon each count of the petition to the effect that if the notes were taken under the agreement mentioned between the brothers and the money was loaned *by the plaintiff*, to make provision for his brother in case he should outlive plaintiff, and that they should belong to plaintiff if he outlived his brother, the judgment should be for the plaintiff. These declarations were given. Declarations asked by plaintiff to the effect that if the money loaned was out of *partnership property* and the agreement was made as stated in relation to the notes, the judgment should be for the plaintiff, were refused. Other declarations asked by plaintiff and refused indicated the same theory.

From this it appears that the theory of the trial court was that the plaintiff was not entitled to recover because the property sued for was partnership property, and that it passed to David J. Green on a division of the assets of the partnership and thereby became his individual property on the 26th day of May, 1906, and belonged to his estate at his death.

I. The special finding of the facts has the effect of a special verdict and must determine the case unless there was a failure of substantial evidence to support the finding. [Williams v. Monroe, 125 Mo. 574, l. c. 579; Advertising Co. v. Castleman, 165 Mo. App. l. c. 588.] This finding, with the general finding and judgment, apparently is sufficient to indicate the theory of the trial court. [Kostuba v. Miller, 137 Mo. l. c. 173.] Yet, it has been held by this court that separate declarations of law are not only proper, but necessary when requested. [Sutter v. Raeder, 149 Mo. l. c. 307; Rausch v. Michel, 192 Mo. l. c. 302; Fruin v. O'Malley, 241 Mo. 250.]

The declarations given and refused in this case indicate a theory entirely consistent with the conclusion evidently reached from the finding of facts.

The finding as set out above does not state with precision a definite conclusion as to all the facts in issue, but no point is made against the finding on that account. Briefly, the pertinent, contested and important conclusions were:

(1) That Edward Green and David J. Green were partners in Chicago from 1893 to 1905, and also in Pierce City in 1905 and 1906.

(2) That they were partners "during the time of the transactions" (presumably from 1893 until May 26, 1906).

(3) That the loans, represented by the notes and money involved in this suit, *were made from money drawn out of the account of Green Brothers,* and were made with the agreement between the brothers that in the case of the death of either the notes should become the property of the survivor; the notes were taken in the name of David J. Green and by him indorsed at the time they were taken in order to carry out that understanding.

(4) That some of these notes were collected by David Green during his lifetime, and that all uncollected notes covered by the agreement were found in David Green's private box by his executors after his death.

(5) That all matters regarding the money and notes sued on were settled during the lifetime of David J. Green.

Plaintiff excepted to the finding on these grounds among others:

That there was no evidence to support the finding that a partnership existed in Chicago; no evidence of any settlement or adjustment of any loan transactions between the two.

II. While the evidence tends strongly to show that Edward Green owned the business in Chicago and that it was not a partnership business, yet the fact that it

was conducted in the name of Green Brothers may be conceded sufficient to support the finding that there was a partnership there. However, it **Partnership.** was not the same partnership as that formed between the parties in the conduct of the produce business in Pierce City, Missouri. The latter was a different business, in a different place, under different conditions, and, it appears from the court's finding, was an entirely different and distinct partnership from the one in Chicago. The affairs of an earlier and entirely separate and distinct partnership between the same parties cannot be settled in a proceeding concerning the affairs of a subsequent partnership. [Beeson's Appeal, 2 Atl. (Pa.) 683; Langell v. Langell, 17 Ore. 220.] A mere settlement of the affairs in Pierce City would not conclude the parties as to any matter growing out of the business in Chicago.

III. The only evidence of any settlement between the partners was the fact that they quit the produce business and the entries on the books of the bank showed that on the 26th of May, 1906, $1100 was **Extent of Settlement.** drawn from their joint account and substantially the same amount was deposited to the two nearly equal individual accounts of the brothers. This is sufficient to justify a conclusion that there was a settlement of the partnership produce business, and a division of the proceeds. But there is no evidence whatever that there was any division of any notes covered by the agreement which the trial court found to exist. There were no book entries, papers or records of any kind regarding these notes in connection with the partnership business. The total money brought from Chicago and placed to the credit of Green Brothers in Pierce City, as shown by the testimony, was $12,000. All of that amount was loaned out within a month or two after its arrival. Some of the notes, the evidence shows, were collected and possibly applied to other purposes, but the remainder represents the amount in suit here, which involves $8350.

The finding of the trial court that there was a division of the partnership assets, *including* "the notes and moneys sued for" is not supported by any evidence. Two important facts, one or the other of which was necessary to this conclusion, are entirely wanting: *First,* there was no proof that there was any division of the notes. The evidence and the finding were that all the notes, excepting those collected and previously otherwise disposed of, remained at David Green's death in the same condition in which they were placed when the loans were made. *Second,* the Pierce City produce business was the only business which the evidence shows was settled, and there is no evidence whatever that the notes in question arose out of or were connected with that produce business. On the contrary, it is clearly shown that the loans were made with money received from Chicago about the time the produce business was started and could not have been the product of that business. It is not even shown that the money which went into the produce business came from the same source as the money which went into the loans. Hence, David Green could not have received the notes in any settlement.

IV. As between the parties, whether a partnership exists is a matter of intention. If they intend a joint enterprise in which they engage to possess the characteristics of a partnership it is so, whatever they **Elements of Partnership.** may name it; if not, it is not so, so far as their relations to each other are concerned. [Hughes v. Ewing, 162 Mo. 261, l. c. 295-300; Mining Co. v. Swope, 204 Mo. 48; Hazell v. Clark, 89 Mo. App. 78; Torbert v. Jeffrey, 161 Mo. l. c. 655; McDonald v. Matney, 82 Mo. l. c. 365; Musser v. Brink, 68 Mo. 242, 80 Mo. 350.]

The contract between the Green Brothers, as found by the trial court upon ample evidence, in regard to the notes which are the subject of this suit, shows on its face that no partnership in respect to them was intended by the brothers; the essential elements constituting a partnership were wanting in their expressed purpose.

Green v. Whaley.

It was not a business enterprise, there was no sharing of loss or profits as ordinarily understood. The agreement was simply that certain property, *owned jointly,* should be the sole property of the survivor on the death of the other.

Was this property impressed with the character of partnership property because the brothers happened to be in partnership in other business? The trial court found that a partnership existed in Chicago, and it may be inferred that the court intended to say the money which went into the loans was the product of the Chicago business. It is possible that it was the profits of the business so long continued at Chicago, though there was no direct evidence whatever of that fact. It is just as easy to infer that the money came from some other source. But for the purpose of this argument it may be conceded that the money loaned and represented by the notes was the profits of the Chicago business.

It is entirely within the power of partners to convert partnership property into separate property, either the individual or the joint property of the partners, and when they do so as between themselves, it is not subject to any of the incidents of the partnership business. [Grant v. Bannister, 160 Cal. 774, l. c. 781-2; In re Swift, 118 Fed. 348; Brown v. O'Brien, 4 Neb. 195; Shafer's Appeal, 106 Pa. St. 49, l. c. 56; Thompson v. Bowman, 73 U. S. 316; Robinson Bank v. Miller, 27 L. R. A. 449; Jenkins v. Jenkins, 81 Ark. 68; Allen & Drinwater v. Thrall, 10 Vt. 234; Richards v. Manson, 101 Mass. 482, l. c. 485; Beckwith v. Manton, 12 R. I. 442; Lindsay v. Race, 103 Mich. l. c. 33-4; Gilmore on Partnerships, pp. 128-9.]

Segregation of Partnership Funds.

The question, whether the investment of partnership funds in other property constitutes such property partnership assets, usually arises in cases of investments in real estate, but the principle is the same with regard to the purchase of personal property, or the investment of partnership funds in personal property, not to be

used in partnership business, as some of the cases above cited will show.

Even if the notes represented loans of money taken out of the partnership business and even if there was a general partnership, of which we have no evidence, continued from the beginning in Chicago down to the end in Pierce City, the evidence shows that these notes were not partnership property to be affected by the settlement which the trial court found was made between the partners. As between the parties the intention must govern and that intention may be determined from the agreement between them. "The only true method, therefore, of determining as between the partners themselves, what belongs to the firm and what does not, is to ascertain what agreement has been come to on the subject." [Gilmore on Partnerships, sec. 43, p. 128.] The very contract which the court found was entered into between the parties regarding these notes, in explicit terms takes it out of the operation of any partnership business and invests it with the character of joint property, in which each had an additional contingent interest. The loans were what some of the authorities term "a joint venture" as distinct from partnership property or partnership enterprise. [Gamble v. Loffler, 133 N. W. 288.]

V. It is suggested in the briefs that the answer in this respect pleads an accord and satisfaction. There being no equal division it might be suggested that in the adjustment the matter was settled so that whether the division were equal or not, whether it was just and fair or not, the amount of money which Edward Green received on the 26th of May settled it so far as he was concerned and left the notes in the hands of David J. Green and constituted an accord and satisfaction.

Accord and Satisfaction.

The entire transaction is wanting in the elements which go to constitute an accord and satisfaction. That occurs and is binding only when there is a well understood and executed agreement to settle or compromise all demands arising between the parties concerning

which they have a dispute. In this case there was no evidence whatever of disputed claims by the brothers or disagreement as to the amount coming to each, no evidence of an agreement to settle by a specific payment, and no evidence of a payment in pursuance of such an agreement. [Scott v. Realty Co., 241 Mo. 112, l. c. 134-5; Investment Co. v. Bernardnon, 164 Mo. App. l. c. 388; Rogers v. Foundry Co., 167 Mo. App. l. c. 251.]

Upon the finding, therefore, by the trial court of the existence of the contract between the brothers affecting the notes as alleged in the petition, which contract provided that the notes should be the property of the survivor of the two, and in the absence of any evidence or circumstances to show that the agreement was changed or modified in any manner, this court is obliged to hold that upon the death of David J. Green the notes, all of which were then in the place where they were deposited when made, became the property of Edward Green and the proceeds of the notes after their conversion into money by the administrator of David Green became the property of Edward Green for which the estate of David J. Green is liable.

The money mentioned in the 6th and 7th counts of the petition was subject to the same agreement, according to the evidence and the finding.

VI. It remains to consider only the objection of respondent that the contract is not valid or enforcible. Respondent's counsel does not directly question the ability of parties to make such a contract but questions whether this contract is proven in such form that it may be enforced. The arrangement whereby the surviving brother was to have the notes was not a gift, either *inter vivos* or *causa mortis*. [Foley v. Harrison, 233 Mo. 460; Pennell v. Ennis, 126 Mo. App. l. c. 359; Hamilton v. Clark, 25 Mo. App. 428.] The notes involving the agreement were the joint property of Edward Green and David J. Green, according to the finding of the trial court. The agreement was that on the death of one the property should

Enforcible
Contract.

belong to the other. The promise of one was sufficient consideration for the promise of the other. [Moss v. Green, 41 Mo. 389; Scriba v. Neely, 130 Mo. App. 258; Wilt v. Hammond, 179 Mo. App. 406.] Nor is such contract open to the objection that it was an attempted testamentary disposition of property. It is a present contract presently executed. The fact that it was to be performed after the death of one or the other of the parties does not make it testamentary. [Maze v. Baird, 89 Mo. App. 348; Robbins v. Estate of Robbins, 175 Mo. App. 609, l. c. 615; Miller v. Western Coll. of Toledo, 42 L. R. A. (Ill.) 797, l. c. 802.] It resembles a contract between two persons to make mutual wills, or a contract to devise property in a certain way or to leave it to a person on the decease of the owner without designating in what particular way it is to vest in the party to whom it is given; contracts which have been universally enforced in this State. [Wright v. Tinsley, 30 Mo. 389, l. c. 396; Wanger v. Marr, 257 Mo. 482; Sutton v. Hayden, 62 Mo. 101; Merrill v. Thompson, 252 Mo. 714; Sharkey v. McDermott, 91 Mo. 647.] Under these authorities a contract of that character will be enforced whether in writing or parol. It is not within the Statute of Frauds in this case, because it concerns personal property only and might have been fully performed within a year. [Suggett's Administrator v. Cason's Administrator, 26 Mo. 221; Biest v. VerSteeg Shoe Co., 97 Mo. App. l. c. 149, and cases cited; Wynn v. Followill, 98 Mo. App. 463.]

Such contracts are usually enforced by an action for a specific performance, but a suit at law will lie where it affords a remedy, as in the case of a note made payable after the death of the maker, as in the Robbins case and in the Miller case, supra.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.