**DIVERSIFIED FRUIT FARMS, Inc., v.
JOHNSON.**

No. 1387—5990.

Commission of Appeals of Texas, Section B.
March 15, 1933.

McDonald & Wayman and H. E. Kleinecke, Jr., all of Galveston, for plaintiff in error.

C. M. Kay and B. C. Johnson, both of Houston, and Roy Johnson, of Galveston, for defendant in error.

RYAN, Judge.

On July 31, 1928, the Diversified Fruit Farms, Incorporated, executed a series of six notes, each for $1,000, payable to the order of F. A. Johnson and M. S. Perez, with interest at 7 per cent. per annum, interest payable semiannually on December 31 and July 1, each year, from date until paid, together with an additional amount of 10 per cent. on principal and interest as an attorney's fee if placed in the hands of an attorney for collection or if collected through bankruptcy or probate proceedings.

The first of said notes was payable on or before December 31, 1929, and the others in numerical order, on or before the 31st day of December thereafter until all are paid.

Each of said notes contains the following acceleration clause, viz.: "This note is one of a series of notes and it is understood and agreed that the failure to pay this note, either principal or interest, or any of said series of notes, promptly when due, shall at the option of the holder, mature the full amount hereof, or the entire series, as the case may be."

The interest installments on said notes, due July 1, 1929, were not paid, and Johnson individually and in his own name filed this suit against the maker of the notes and against M. S. Perez, his copayee, for the recovery of principal, interest, and attorney's fee, covering all said notes, with award to him of his portion thereof, or in the alternative for the amount of his interest in all said notes, principal, interest, and attorney's fee, costs, and general relief.

It was alleged in his petition that on and prior to the date of said notes, he and Perez, copayee therein, were partners, and on said date said partnership sold certain partnership property to said Diversified Fruit Farms, Incorporated, and received said notes sued on in consideration therefor; that plaintiff and defendant Perez have reached an agreement as to their partnership affairs whereby plaintiff owns a 60 per cent. interest in said notes, and Perez owns a 40 per cent. interest therein.

It was further alleged that, because of default in the payment of the interest installments due July 1, 1929, he (Johnson), exercis-

ing his option under said acceleration clause, had declared all said notes due and payable, but said Perez had failed and refused to join him in declaring all said indebtedness due and payable.

A copy of the agreement dissolving the partnership of Johnson and Perez, dated March 15, 1929, was attached to the petition by way of exhibit.

It appears from said exhibit, as recited therein, that "the partnership heretofore existing between said parties has been this day dissolved and the affairs of the firm wound up and settled" on the basis therein set forth. Certain specifically named assets were awarded to Johnson and certain other specifically named assets were awarded to Perez. The sixth paragraph of said agreement of dissolution disposed of the promissory notes involved in this litigation, as follows: "The firm owns six promissory notes totalling $6,000.00, now in the possession of Jas. W. Wayman, as trustee for the parties hereto, 60% of which notes is owned by F. A. Johnson and 40% by M. S. Perez"; and the tenth paragraph thereof is as follows: "Each party agrees not to use the other's name in any future business transactions without written consent, except for the purpose of collecting accounts or disposing of assets as per this agreement."

Perez filed no answer, but the Diversified Fruit Farms pleaded to the jurisdiction of the court on the proposition that the only amount due is six months' interest amounting to $210, cognizable exclusively before a county court, excepted generally to the petition, and specially thereto, in that "it appears from the face of the petition that the only amount that could be due on said notes is six months' interest, which is below the jurisdiction of the court." The answer then contains a general denial, and by way of cross-action alleged that, at the time this suit was filed, plaintiff, Johnson, caused a writ of garnishment to issue and be served upon Texas City Canneries, Inc., because of which an indebtedness of $4,058.24 due by said garnishee to said defendant could not be collected, to its damage in a sum equal to the interest on said fund from that date; also, at the time such writ of garnishment was so served, the defendant owned 35 shares, capital stock, of the garnishee, which defendant was prohibited from transferring and disposing of, to its damage in the sum of $500, wherefore judgment was accordingly prayed against plaintiff, Johnson, and the sureties on his bond in garnishment.

The general demurrer was sustained by the trial court, and, plaintiff having declined to amend, the petition was dismissed. On the cross-action, the trial court found the garnishee was indebted to the defendant when the writ of garnishment was served, in the sum of $4,058.24, 6 per cent. interest on which

to date of judgment amounts to $154.04, and rendered judgment against the principal and sureties on the bond in garnishment for said sum of $154.04.

Appeal was had to the Court of Civil Appeals on three assignments of error, substantially: (1) The trial court erred in sustaining the general demurrer, thereby holding that Johnson did not have the right to mature the notes in accordance with their terms and his contract with Perez; (2) the trial court erred in sustaining the general demurrer, thereby holding that Johnson could not mature his interest in said notes because of the failure of Perez to join him in declaring them due; and (3) the trial court erred in holding that the only amount due upon said notes was the sum of $210, being six months' interest—an amount not within its jurisdiction—and in dismissing the case for that reason.

The majority of the Court of Civil Appeals in reversing the judgment below and remanding the cause held in substance that Johnson, alone, as a member of the partnership, had the right to mature the entire series on the ground that the notes were partnership assets at that time (although it had been dissolved).

Associate Justice Graves of that court dissented, being of the opinion that the notes in question had been disposed of in the dissolution agreement and were no longer partnership assets, but belonged to both Johnson and Perez, in their individual capacities, each owning a certain specific, definite interest therein, and neither had the right of control over the interest of the other, under which circumstances it required the consent of both to effectuate the acceleration clause, and, as Perez had refused, Johnson alone was without the right to do so.

### Opinion.

■ First. So far as the notes in question are concerned, they were specifically disposed of in the agreement dissolving the firm and disposing of the firm's assets; thereafter they were not partnership property, but belonged to Johnson individually in the proportion of 60 per cent. and to Perez individually in the proportion of 40 per cent., and were placed in the possession of Jas. W. Wayman, as trustee for said parties. After the dissolution, they owned the notes—each his respective interest therein—not as partners, but as tenants in common. Stair v. Richardson, 108 Ind. 429, 9 N. E. 300.

■ As said by the Supreme Court of Missouri, in Green v. Whaley, 271 Mo. 636, 197 S. W. 355, 360: "It is entirely within the power of partners to convert partnership property into separate property, either the individual or the joint property of the partners, and when they do so as between themselves it is not subject to any of the incidents of

the partnership business. Grant v. Bannister, 160 Cal. 774, loc. cit. 781, 782, 118 P. 253; In re Swift (D. C.) 118 F. 348; Brown v. O'Brien, 4 Neb. 195; In re Shafer's Appeal, 106 Pa. 49, loc. cit. 56; Thompson v. Bowman, 73 U. S. (6 Wall.) 316, 18 L. Ed. 736; Robinson Bank v. Miller, 153 Ill. 244, 38 N. E. 1078, 27 L. R. A. 449, 46 Am. St. Rep. 883; Jenkins v. Jenkins, 81 Ark. 68, 98 S. W. 685; Allen & Drinwater v. Thrall, 10 Vt. 234; Richards v. Manson et al., 101 Mass. 482, loc. cit. 485; Beckwith v. Manton, 12 R. I. 442; Lindsay v. Race, 103 Mich. loc. cit. 33, 34, 61 N. W. 271; Gilmore on Partnerships, 128, 129."

■ When a partnership is dissolved, the general agency which grew out of it is terminated, and the powers implied from the relationship are also terminated, except those which are necessary to the winding up of the business; the former partners retaining only such powers to act for each other as all joint debtors or joint creditors possess and such power as has been expressly conferred. Where there is a formal agreement of dissolution, it measures the rights and obligations of the parties as between or among themselves. 47 C. J. 1124; 20 R. C. L. 968; 30 Cyc. 681.

■ Section X of the contract refers to accounts and not to the notes which were completely disposed of in section VI, whereby said notes were placed in the possession of Wayman as trustee for the parties, and the ownership of the notes divided in the proportion of 60 per cent. to Johnson and 40 per cent. to Perez, respectively. Section X gave each party the right to use the other's name in collecting the accounts mentioned in section II and specifically divided in sections III and IV. In other words, Perez had the right to use Johnson's name in collecting the accounts specified in section III, and Johnson had the right to use Perez' name in collecting the remaining accounts specified in section II, and each had the right to use the other's name in collecting accounts as divided in section VII and selling assets given to each by sections II, III, and IV.

Section X gave Johnson no right to sell, transfer, or indorse over the interest of Perez in the notes, because they had already been disposed of in section VI; for the same reason, it cannot be contended that by section X Perez gave Johnson the right to mature the notes. The fact that Johnson had the right to use Perez' name in collecting the accounts standing in the partnership name which were set over to him individually by the agreement had no reference to the notes divided between them by section VI and disposed of therein. The notes were placed in the hands of a trustee so that neither could have possession or control over them. So far as the notes were concerned, there was a

complete "winding up," when the parties effected a division and placed the notes in possession of a trustee; thereafter the parties owning the notes became tenants in common.

■ We have therefore reached the conclusion that Johnson had not the power to control the interest of Perez in the notes in question, and override the latter's refusal to accelerate payments due the latter. Perez controlled his interest in the notes as his own property, freed from any control by Johnson as representing the dissolved firm; no claim by firm creditors appearing.

■■ Second. This brings us to the question whether Johnson had the right to mature his interest in the notes; this, of course, depends upon the terms of the contract of acceleration embraced therein.

It is provided that only at the option of the "holder" (after delinquency in payment, either of principal or interest) may the full amount of any given note or the entire series, otherwise not due, be matured.

The term "holder" means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof. Rev. St. 1925, art. 5948, § 191.

The singular and plural number each includes the other, unless otherwise expressly provided (Rev. St. 1925, art. 10, subd. 4), so Johnson and Perez, after dissolution of the partnership, became the individual "holders" of the note, and were both required to join in exercise of the option to declare all the notes due and matured. The contract of acceleration requires, in this character of case, exercise of the option by the "holders," and is not enforceable by any one or more partial or fractional holders against the wish or desire of the other partial or fractional holders.

The only right to mature the entire series is by virtue of the acceleration clause in the notes, which must be construed as any other provision in a contract. Notes and other instruments sometimes provide for maturity of the whole indebtedness at the option of the holders, or either of them, upon default by the maker, but we have found no case where the acceleration clause allowed one of two or more payees to mature the whole indebtedness against the refusal of, and contrary to the wishes of, the other payee or payees.

Chief Justice Gaines, in Bomar v. West, 87 Tex. 299, 28 S. W. 519, 520, construed an analogous clause contained in a deed of trust securing a series of several notes, and concluded that there is no such right in one of several payees of a note providing for acceleration at the option of the "holder."

In that case, one Skinner made five promissory notes to one Bomar, payable one, two, three, four, and five years after date, re-

spectively, to secure payment of which Skinner executed a deed of trust, which contained this clause: "In default of the payment of said notes, or of either of them, that a foreclosure of said trust deed should be had at the instance of said D. T. Bomar, or the legal holder of said notes." The first of the notes to mature was transferred by Bomar to the West Publishing Company before maturity, and subsequently the others were transferred to one Callahan. Skinner having failed to pay at its maturity the note which was transferred to the West Publishing Company, the trustee, at the request of that company, advertised and sold the land at public outcry.

In holding the sale invalid the court said: "We are of opinion that the sale by the trustee did not pass title to the land. The limitation upon the power of the trustee to sell upon default in the payment of either of the notes at maturity is that he shall act upon the request of 'the holder of the notes.' The literal meaning of this language is that any person who was the lawful holder of all the notes at the time default was made in the payment of either of them should have the right to demand of the trustee that he make the sale. It may be that it should be construed to mean that the joint demand of all the holders of the notes would be sufficient to authorize the trustee to execute the trust upon default in the payment of either. But we are of opinion that it does not mean that, in case of a transfer of the several notes to different holders, any one of them has the right to demand a sale without the consent of the others. Such a construction is not beneficial either to the mortgagor or to the original holder of the notes."

To the same effect is the holding in Austin v. Carter (Tex. Civ. App.) 296 S. W. 649.

So here only the "holders" of the note could declare the entire indebtedness matured; the very terms of the contract evidenced by the acceleration clause required a unanimous exercise of the option, and anything short of that was ineffective.

▮ Third. No statement of facts appears in the record, and no assignment of error was directed by defendant in error to the judgment on plaintiff in error's cross-action in the trial court, and we therefore must assume that the same was rendered on proper evidence.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals is reversed, and judgment of the district court is affirmed.