[Sac. No. 1814. Department Two.—September 25, 1911.]

## WILLIAM GRANT, Appellant, v. W. D. BANNISTER and DAVID HEARFIELD, Respondents.

PARTNERSHIP—ACCOUNTING—QUARRY OWNED BY PARTNERS AS TENANTS IN COMMON.—In an action for an accounting of a partnership in the working of a marble quarry, and for a division of the partnership assets, findings that the parties owned the quarry in question as tenants in common, and not as the property of the partnership, are held supported by the evidence.

ID.—CONSTRUCTION OF DEED TO PARTNERS—UNDERSTANDING OF PARTNERS.—Where doubt exists as to whether a deed conveying land to the individuals constituting a partnership conveyed the interests in common or in partnership, the construction put upon the deed by the parties themselves affords the surest and most certain test of their own understanding, and is controlling as between themselves, although it would not be controlling as to creditors or third parties. This rule is applicable to a deed which in terms conveys to the grantees as tenants in common, but declares that it is made in fulfillment of a partnership agreement.

ID.—CONSTRUCTION OF INDEFINITE DEED.—A deed or contract indefinite in terms may be made definite and certain by the practical construction of the parties to it.

ID.—DEED TO PARTNERS INDIVIDUALLY—TENANTS IN COMMON.—A deed of realty to partners individually, if unexplained, vests in them undivided interests as tenants in common.

ID.—PROPERTY USED FOR PARTNERSHIP PURPOSES—TITLE NEED NOT BE IN PARTNERSHIP.—Property may be used for partnership purposes and not belong to the partnership. It may belong either to a third person, to one of the partners, or to the partners as tenants in common.

ID.—PRIOR SETTLEMENT OF PARTNERSHIP AFFAIRS.—The finding that the partnership affairs of which an accounting is asked were adjusted, settled, and the partnership discontinued long prior to the commencement of this action, is held supported by the evidence.

APPEAL from an order of the Superior Court of Tuolumne County refusing a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Edmund Tauszky, John F. Davis, and R. P. Henshall, for Appellant.

R. H. Countryman, and J. B. Curtin, for Respondents.

HENSHAW, J.—This action was brought for a partnership accounting and a division of the partnership assets. Judgment passed for defendants; plaintiff moved for a new trial, and from the order denying this motion, but not from the judgment, he appeals. The attention of this court is not directed to any alleged errors of law occurring during the progress of the trial, but the consideration upon appeal is limited to a contention against the sufficiency of the evidence to justify the findings.

Oral negotiations between the parties resulted in their entering into articles of copartnership for the general purposes of quarrying, working, buying, and selling building stone, but for the especial purpose of so quarrying, working, and selling marble from the Gold Spring Marble Mining claim in Tuolumne County, California. The partnership was to continue for the term of ten years under the directions of the defendant partners, Bannister and Hearfield. Plaintiff was to cause to be conveyed the Gold Spring Marble Mining claim, with its water-rights, to the partners in the proportions of "one half undivided" to himself; "one quarter undivided" to Bannister, and "one quarter undivided" to Hearfield. The two defendant partners were to pay to plaintiff one thousand dollars, and to expend in the improvement of the quarry in the erection of a plant and in the carrying on of the business the sum of $16,500 within two years. Bannister was to "devote his entire time and services to the business," receiving no compensation therefor. Hearfield was to "devote his time and services" between the business of the Columbia Marble Company and the business of the firm of Hearfield, Bannister & Company, and was to receive no compensation for his services to the marble company. The profits were to be divided, one

half to plaintiff, and one quarter each to the defendants. The losses were to be borne in the same proportion. The services to be rendered by the defendant partners is expressed as the "main inducement and consideration" for the formation of the partnership, the money contributions being described as "very secondary." If, after the expiration of two years, plaintiff desired to sell, the defendants "shall have the right to purchase by paying to the plaintiff the sum of $20,000." And, finally, it was provided: "At the expiration of the period of partnership the party of the first part shall be the owner of one half of the property, and assets of the business, and the party of the second part the owner of one fourth thereof, and the party of the third part the owner of one fourth thereof, unless the interests of the parties hereto shall be changed by sales and purchases or effected by overdrafts, and that if at any time the interests of the parties hereto are changed by purchases or sales, the interest of said parties in profits and losses shall be changed accordingly. The owner of the Gold Spring Marble claim made a conveyance to these partners of the property "in the proportion of one half undivided to said William Grant, one quarter undivided to said David Hearfield, and one quarter undivided to said William D. Bannister." The deed declared that: "This conveyance is made by said party of the first part to said parties of the second part hereto in accordance and compliance with the terms and conditions of certain articles of co-partnership made and entered into this day by and between said parties of the second part and to enable said William Grant (son of the party of the first part hereto) to comply with and perform the conditions contained in said articles of co-partnership by and on the part of said William Grant."

The defendant partners contributed the money called for by the articles of co-partnership, and devoted their time and services to its conduct and management, but the business proved unprofitable. Two years and more passed, and plaintiff sold his undivided half of the quarry, following which an accounting was had of the partnership affairs, resulting in the payment by plaintiff of the amount found due from him. No business at all, or business of no consequence, was ever afterward transacted. The articles of co-partnership were entered into in August, 1891, and by their terms were to con-

tinue in force for ten years. Indeed, the attempt to quarry and market the marble had ceased prior to the date of this sale, which was in 1898, for in 1897 a lease for ten years of the quarry was made by the partnership to third persons. The lessees, however, paid but one year's rent and the lease was allowed to lapse. This action was brought on July 31, 1900, about eighteen months after plaintiff's sale of his interest in the quarry and the settlement of the partnership accounts.

His contention is that under the articles of co-partnership the term of the co-partnership was to be for full ten years, during which time the defendant partners were to devote their services to the co-partnership in the manner above indicated; that the articles of co-partnership recited that these services were the moving consideration for the agreement, and that one of these partners, just before the execution of the articles, furnished to plaintiff a memorandum as follows:

"Amount of money to be put in.

                                                         17500

"2nd  parts  time )
"                 ) $300 per month.
"3rd  parts  time )
"= 3
"3600.00 per annum
      "7% =                                              51428
                                                        ───────

                                       "$68928;"

that this memorandum gave evidence, in accordance with the declarations of the agreement, that the services of the two defendant partners were considered of great value; that the Gold Spring Marble Mining claim was conveyed to the Columbia Marble Company as a co-partnership; that notwithstanding the sale by plaintiff of his interest in this property, the remaining moiety still remained the property of the partnership; and that a proper adjustment and settlement of accounts would take the value of this undivided one half into consideration in connection with the fact that the defendants had not rendered the services contemplated, and that a true adjustment of the relations, accounts, and affairs of the co-partners would be upon this basis.

The court's findings, however, were to the following effect:

That the Gold Spring Marble Mining Claim or quarry was not the property of the partnership, but was conveyed to and owned by the parties to the action as tenants in common, in the proportion of one half to the plaintiff and one quarter each to the defendants; that there was no agreement as to the value of defendant's services upon the basis of three hundred dollars per month; that after the conveyance by plaintiff of his one-half interest in the marble claim, plaintiff and defendants by mutual consent dissolved their partnership, and a full, fair, and final accounting and settlement was thereupon had between them.

If these findings are supported there is an end to the controversy.

Considering the finding of the court touching the services which the defendants were to render and their value, it is found that in the preliminary negotiations between them for the partnership, it was estimated that the services to be rendered by each of the defendants would be worth one hundred and fifty dollars per month, but that no agreement was entered into that such should be the cash valuation of such services, or with reference to a cash equivalent of such services; nor was any amount agreed upon or fixed as the equivalent for such services and money in case said services were not rendered; nor was there any agreement between them with reference to the value of the marble quarry property, nor was the sum of one hundred thousand dollars or any other sum at any time recognized or agreed to by the parties as the value or valuation of the quarry property. Plaintiff's contention was that the quarry property was of the estimated value of one hundred thousand dollars; that against this the defendants were to put into the business $17,500 in cash and $51,428 upon the basis of three hundred dollars a month for their services, continuing over the period of ten years, making the not disproportionate amount of $68,928, which they were to apply as an offset to the value of the quarry, and that at the end of ten years, and only at the end of ten years, were they to own the assigned one-fourth interests in the quarry. The evidence against this contention and in support of the findings is, however, that the plaintiff, who was a lawyer, being anxious to enlist the defendants, who were practical business men, in the operation of the quarry and in the conduct of a marble

business, first offered to sell them the quarry for twenty-five thousand dollars cash, failing which he proposed articles of copartnership to last for two years, the defendants to supply the necessary money and devote their time and services, the one at the quarry, the other in San Francisco, in the product and sale of the stone. Defendants objected that the two years' time was altogether too short to justify them in the investment of so large an amount of money, and estimated, moreover, that the services which they would be expected to render would represent in value at least one hundred and fifty dollars a month each. It was in the course of this discussion that the figures above quoted were made. The two years' proposition was rejected and the ten years finally agreed upon.

The evidence of the defendant partners agrees that the articles of copartnership entered into never contemplated the valuation of their services for any other purpose than that indicated; that the contention was never made by the plaintiff or by any one else on his behalf; that no part of the consideration for the quarter interest in the quarry which each received was the services to be rendered by them, and they both positively asserted that there was never at any time any agreement by which their services were to be measured, figured, or adjusted upon that or any other basis. The partnership business failing to be profitable, and plaintiff being in debt to the partnership, the other partners having advanced more even than the moneys called for, plaintiff undertook to accomplish the sale of his interest in the quarry, agreeing to settle his accounts with the partnership after such sale. The contemplated sale by plaintiff was to Crooks and Jarboe of his undivided one-half interest for the sum of fifty thousand dollars. If it be argued that this established a value for the whole quarry of one hundred thousand dollars, the answer is not alone from the testimony of the defendants that it was originally offered to them for twenty-five thousand dollars, but it is found also in the partnership articles. By those articles, if plaintiff was minded to sell his interest, the defendants had the right to purchase it by paying therefor the sum of twenty thousand dollars. In contemplation of the fifty-thousand-dollar sale, they could have exercised this option and themselves sold the half interest instead of assenting to the sale which they thus permitted plaintiff to make.

The finding to the effect that plaintiff and defendants owned the quarry as tenants in common in the indicated proportions and that the quarry was not the property of the partnership, is sought to be overcome by the language of the partnership articles, by the terms of the deed, and by the testimony of the plaintiff. Against this is the testimony of the defendants and the whole course and conduct, writings, and declarations of the plaintiff himself at variance with this contention. The utmost that can be said for the deed is that it in terms conveys to the grantees as tenants in common, but declares that it is made "in fulfillment of the partnership agreement." It has been said that under the construction given by the court defendants' titles were not conditioned either upon the value or the continuance of their services. The partnership proved unprofitable, a continuance of their services would but have involved the partners still further in debt; plaintiff was owing moneys to the partnership; the business had been discontinued; a lease had been made of the quarry itself—substantially the only thing within the contemplation of the partnership business; and, finally, when the lease lapsed, plaintiff made a sale of his interest in the quarry, which the grantees of that interest testified they considered meant the substitution of themselves in the place of plaintiff in the business, and included whatever interest in the personal property plaintiff might possess. To this brief statement may be added that the testimony of the defendant partners is to the effect that they also considered that plaintiff was eliminating himself from the partnership by this sale and the subsequent accounting and settlement which was had. But if it be conceded that doubt exists of the true construction of this deed, as to whether it conveyed the interests in common or in partnership (Civ. Code, sec. 682), then the construction put upon it by the parties themselves affords the surest and most certain test of their own understanding. True, this understanding would not control the rights of creditors or outside parties, but it is controlling as between the parties themselves and no outside interests are here involved. It is well settled that a deed or contract indefinite in terms may be made definite and certain by the practical construction of the parties to it. (1 Warvelle on Vendors, pp. 367, 375; *Mulford* v. *Le Franc*, 26 Cal. 108; *Hastings* v. *Stark*, 36 Cal. 126;

*Truett* v. *Adams,* 66 Cal. 222, [5 Pac. 96]; *Mittau* v. *Roddan,* 149 Cal. 14, [6 L. R. A. (N. S.) 275, 84 Pac. 145].) Says this court in *Widbur* v. *Washburn,* 47 Cal. 67: "The parties have themselves so construed the deed by their subsequent acts and there is no reasonable ground to doubt that this is the correct interpretation of it." In *Hill* v. *McKay,* 94 Cal. 20, [29 Pac. 410], it is said: "When the meaning of the language of a contract is doubtful, the acts of the parties done under it afford one of the most reliable clues to the intention of the parties." Plaintiff's own testimony forces the conclusion that he himself construed the deed as did his defendant partners. Noticing but a few matters so demonstrating: The consent to the sale made by plaintiff to Crooks and Jarboe of his one-half interest was prepared by plaintiff. It does not purport to assent to the sale of partnership property, but is a "consent to the sale by said William Grant of his undivided one-half interest in said lands and property." . Plaintiff's deed to Crooks and Jarboe is a deed to "an undivided one-half interest of, in and to that certain lot, piece or parcel of land" etc. This deed is made by plaintiff alone, not in the name of the partnership, and does not purport to convey partnership property. The agreement for the conveyance entered into by plaintiff with Crooks and Jarboe for the sale of his undivided one half and signed by plaintiff, declares that plaintiff will convey to the other parties an undivided one half of the marble quarry property "which property was acquired by the party of the first part and David Hearfield and W. D. Bannister, and is now owned by said Grant, Hearfield and Bannister in the proportions of one half to said party of the first part, and one fourth each to the said Hearfield and Bannister." An agreement entered into between the three partners in reference to the water-rights conveyed as appurtenant to the quarry contained the recital that Grant, Hearfield, and Bannister "were the owners as tenants in common in the proportion of one half to Grant and one fourth each to Hearfield and Bannister of that certain property known as the Marble Quarry, with its water-rights and appurtenances." Plaintiff, as has been said, is a lawyer, with knowledge of the meaning of the terms used, and throughout all of the record of their transactions there is no suggestion that he considered that the title to the property rested in the partnership or that

it was other than property held by the partners as tenants in common and used for partnership purposes. This, of course, is in accordance with the general construction of instruments where a deed of realty to partners individually, if unexplained, vests in them undivided interests as tenants in common. (*Hardenbergh* v. *Bacon,* 33 Cal. 356; *Greenwood* v. *Marvin,* 111 N. Y. 423, [19 N. E. 228]; *Thompson* v. *Bowman,* 73 U. S. 317, [18 L. Ed. 736].) And, indeed, it is no unusual thing that property be used for partnership purposes and not belong to the partnership. It may belong either to a third person, to one of the partners, or to the partners as tenants in common. (*Hendy* v. *March,* 75 Cal. 566, [17 Pac. 702]; *Humes* v. *Higman,* 145 Ala. 215, [40 South. 128]; *Robinson etc.* v. *Miller,* 153 Ill. 244, [46 Am. St. Rep. 883, 38 N. E. 1078, 27 L. R. A. 449]; *Lindsay* v. *Rice,* 103 Mich. 28, [61 N. E. 271]; *Neill* v. *Shamburg,* 158 Pa. St. 263, [27 Atl. 992].)

The third and last finding here necessary to consider is to the effect that the partnership affairs were adjusted, settled, and the partnership discontinued long prior to the commencement of this action. No serious attack is made upon this finding. It is abundantly supported, first, by the written agreement under which the defendants assented to plaintiff's sale of his interest in the property: That agreement recited that subsequent to the sale "William Grant and ourselves will adjust all accounts arising from the transaction of the business of said firm, and that Wiliam Grant will personally account and pay over to us any moneys that may be found due on such settlement of acounts." Such an account and settlement were actually had, and plaintiff paid over some twenty-five hundred dollars found to be due from him. The accounts were made up by a disinterested expert of the partners' joint selection. It was considered as a final adjustment and accounting. The only thing shown upon this trial, which could be considered as overlooked or unsettled items, were expenditures made by plaintiff and aggregating about two hundred and ten dollars—more than offset by expenditures proved to have been made by defendants and not accounted for, aggregating three hundred and fifteen dollars. The items and the amounts were themselves too trifling to support any claim for a new or additional accounting.

For which reasons the order appealed from is affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.