[Civ. No. 8071. Third Dist. Jan. 30, 1953.]

PACIFIC GAS AND ELECTRIC COMPANY, Respondent, v. CHRISTINO MINNETTE et al., Appellants.

Dunnell, Herbert & Dunnell and Bradley & Millon for Appellants.

Robert H. Gerdes, W. R. Dunn, Frederick W. Mielke, Jr., and Burt D. Goodman for Respondent.

VAN DYKE, J.—This is an appeal from a judgment quieting title in plaintiff to granted easements, and granting a mandatory injunction requiring appellants to remove a concrete block building which they constructed beneath the electric transmission wires of the respondent which cross over

appellants' property. The trial court found this building encroached upon plaintiff's rights of way.

The action was brought by respondent and the allegations of the complaint may be summarized as follows: On April 4, 1917, M. Dos Reis and A. Dos Reis were the owners of a large tract of land in Solano County. On that date they granted to plaintiff an easement 40 feet in width across their lands for a term of 50 years. This grant gave the plaintiff the right of erecting and maintaining electric power lines on the parcel described in the grant and contained a covenant that the grantors would not erect or maintain any building or other structure on the right of way. On February 2, 1920, a like grant of easement was executed, giving the plaintiff for a term of 50 years the same easement rights in a strip of land 25 feet in width contiguous to the land described in the first grant. Plaintiff entered into the exercise of its easement rights and erected and maintained poles and wires for the transmission of electric energy. On July 2, 1945, the successors in interest of M. and A. Dos Reis conveyed to defendants and appellants a parcel of land 50 feet wide and 100 feet deep which lay beneath the plaintiff's wires. The complaint further alleged that with full knowledge of plaintiff's easements, and in violation of the original grants containing the building restrictions, the defendants in 1947 built upon their lot and beneath the wires a basalt block building 42 by 50 feet in horizontal dimensions and 21 feet in height, intended for use as a garage and repair shop. The complaint prayed for a decree quieting plaintiff's title to the easements and for a mandatory injunction requiring the removal of the building from plaintiff's rights of way. The court found that all of the foregoing allegations of the complaint were true and in addition found that the roof of the garage was erected to within 4 feet of wires carrying more than 750 volts. The evidence shows without dispute that, in addition to the particular wires referred to in the findings, plaintiff had for many years, before defendants purchased their lot, maintained three lines of poles on which were suspended wires carrying 12,000 volts beneath which, as well as beneath the lower voltage wires, the defendants constructed their building.

The answer of the defendants denied that the plaintiff's rights of way cross their lot, although not denying that their building was beneath plaintiff's wires. These allegations rested upon a theory that the descriptions contained in the right of way grants, when platted by reference to the public

records thereof and by reference to recorded title documents affecting lands referred to in the rights of way descriptions, were located some 100 feet easterly of defendants' lot and touched no part thereof. Defendants denied that plaintiff had ever entered into possession of the granted easements or into exercise of the rights given them, but on the contrary had erected their poles, wires and electric conduits on lands other than those described in the grants. Defendants alleged their title was not subject to the easements claimed by plaintiff. They pleaded that they had between January of 1947 and the 1st day of September of that year built their building at a cost of approximately $9,000; that a portion of the building was constructed beneath "the wires of power lines suspended across said lands by plaintiff"; but defendants denied that their building was constructed on plaintiff's rights of way. They pleaded they had no notice of the recorded easement grants nor of the contents thereof and particularly of those provisions thereof concerning the construction of buildings on the rights of way. They alleged that when they took their title, although plaintiff's wires crossed over their lot, yet buildings had been built by others, not only upon the lot they bought but on property on either side thereof and beneath the plaintiff's wires, with the result that they in good faith believed they likewise had a right to build beneath the wires. Further, defendants alleged that before purchasing the property they caused the public records to be searched by a title company as to any liens, easements or other encumbrances that might be upon the lot they were buying and were told by the title company that the same was free from encumbrances; that they took title and thereafter constructed their building and that during the time of construction plaintiff had knowledge thereof and made no objection thereto until the building was nearly completed. They pleaded that in the intervening years between the granting of the easements for the construction of the electric transmission lines and the purchase of defendants' lot by them the neighborhood had greatly changed and had become closely built up, with the result that the plaintiff's wires extended over many buildings and structures in the same manner and to the same extent that they extended over defendants' building; that their building did not cover the whole of the rights of way claimed by plaintiff and did not interfere with plaintiff's ingress and egress thereto; that their building could not be moved because of the type of construction; that its presence did not damage the plaintiff nor

constitute any but very slight inconvenience to it. They claimed estoppel so far as mandatory injunction to remove be concerned.

To the defendants' answer plaintiff interposed a general demurrer which was sustained without leave to amend and from the judgment thereafter entered the defendants appealed. The judgment was reversed by this court upon the ground that the pleadings presented triable issues of fact, our opinion appearing in *Pacific Gas & Electric Co.* v. *Minnette,* 92 Cal.App.2d 401 [206 P.2d 1138]. Thereafter the case was tried and the present judgment from which this appeal has been taken was entered against the defendants.

We have already said that the court found the allegations of the complaint were true. As to the answer the court found as above stated concerning the proximity of the roof to some of the wires; further found that at the time of the construction of the garage there were and for a long time prior thereto had been present upon the site of the garage a fuel shed and, on property adjoining that site, there was on one side a building 6 by 8 feet in horizontal dimensions used for a dwelling, and on the other side a one-story frame building used for a dwelling and as an office for an auto trailer court; that, aside from such buildings and mobile auto trailers from time to time present, the spaces beneath the wires were clear of any buildings visible from the site of the garage; that defendants had expended about $9,000 in the construction of the garage and that the building could not be moved without the destruction of it; that the defendants "had no actual knowledge of the instruments attached to the complaint as Exhibits A and B [the two easement grants] prior to or at the time of erection of said garage building and that plaintiff did not express to defendants any objection to such construction at the time thereof"; that when the garage was built the neighborhood had been built up with dwellings and business structures, over some of which electric wires, of a light and power company subsidiary to plaintiff, extended. The court found all other allegations of the answer to be untrue.

Appellants contend that the finding the rights of way crossed the defendants' lot is not supported by the evidence. This contention cannot be sustained. The witness Pestoni testified for plaintiff as follows: He was a registered civil engineer and licensed land surveyor; in 1916 he located the right of way granted in 1917, and in 1920 went back and located the second right of way; in each instance he set stakes in the

ground at the exact location where the poles suspending the wires were to be placed; in each case the poles later were actually placed in the ground where these stakes had been placed; all the poles and lines have remained in the same position ever since; having set the stakes, he then drew up descriptions from his survey. These descriptions so drawn were used in the easement grants. Both grants contained statements that the center line of each right of way, where the same crossed the Dos Reis lands, had been located and marked upon the ground by stakes driven therein by the engineer of the grantee and approved by the grantors. Appellants' argument based upon a claim that the surveyor made a mistake with reference to the proper location of his starting point for his survey, so that a platting of the descriptions would put the rights of way in nonconformity with the actual location of the poles and wires, is unavailing here for it is clear from the testimony of the surveyor and from the language of the grants that the parties had agreed upon the actual lines, staked them upon the ground and intended that the descriptions should conform thereto. Any doubt, therefore, as to the conformity of the description as it might be platted with the actual location of the rights of way made by the parties is immaterial. This is a case where the descriptions as written must yield to the monument stakes set before the descriptions were written. They control the descriptions and fix the location on the ground of the rights of way described in the grants. Where the parties themselves so construe a deed by their subsequent acts that there can be no reasonable ground to doubt the correct interpretation of the descriptions used, the location so fixed by the parties themselves and acquiesced in by them over the years would control any technical construction of the deeds. (*Grant* v. *Bannister*, 160 Cal. 774, 781 [118 P. 253].) This is but an application of the rule that when the meaning of the language of a contract is doubtful the acts of the parties done under it afford one of the most reliable clues to the intention of the parties. The findings of the trial court as to the actual location of the rights of way and that these rights of way cross the appellants' lot are amply supported.

 Appellants contend that the finding they had full notice of the easements and rights of way of the respondent is not supported. And partially in support of this contention they point to the court's finding that the appellants had "no actual knowledge" of the deeds of the grants of rights of way,

copies of which were attached to the complaint. This contention cannot be sustained. It is uncontradicted that the transmission lines extended for long distances on either side of appellants' lot; that standing upon their lot they could see north along the lines for at least a mile and see that although the entire territory was closely built up no buildings were constructed beneath the wires. Likewise, turning south they could see that although the territory for a mile or more visible to the south was closely built up on one side of the lines, no buildings were constructed beneath them. Standing on their lot they could also see, of course, that the lines crossed over it. Plaintiff Christino Minnette so testified. It was thus visually apparent when appellants purchased their lot and when they were constructing their building that some person or corporation was actually maintaining power lines across and over appellants' lot. Minnette further testified that while obtaining a building permit from zoning authorities a member of the planning commission went with him upon the lot, called his attention to the wires and suggested that the respondent might have some rights to maintain them where they were; that he then asked Minnette if the respondent had such rights and Minnette replied it did not, whereupon the commission member remarked that in that case and if appellants built, the respondents would have to move or raise the wires.

■ "Possession of land is notice to the world of every right that the possessor has therein, legal or equitable; it is a fact putting all persons on inquiry as to the nature of the occupant's claims." (39 Am.Jur. 242.) "Except in so far as the rule has been varied by statute, actual possession of land is such notice to all the world, or to anyone having knowledge of such possession, as will put on inquiry those acquiring title or a lien on the land to ascertain the nature of the right that the occupant has in the premises. The presumption is that inquiry of the possessor will disclose how and under what right he holds possession, and, in the absence of such inquiry, the presumption is that, had such inquiry been made, the right, title, or interest under which the possessor held would have been discovered. The notice which the law presumes has been held to be actual, and not merely constructive, notice. ■ Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property, *and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such*

*knowledge as would be gained by examination of the public records."* (66 C.J.S. 646, 647; see, also, Civ. Code, § 19, and 20 Cal.Jur. 238.) The foregoing rules are applied by California courts. ■ They are applicable where the possession is under a right of way grant. (*Follette* v. *Pacific Light & Power Corp.,* 189 Cal. 193 [208 P. 295, 23 A.L.R. 965]; see, also, *J. R. Garrett Co.* v. *States,* 3 Cal.2d 379 [44 P.2d 538].) It is uncontradicted in the testimony that appellants made no inquiry of the possessor, that is, of respondent, but professed to rely solely upon the title report which they obtained. But, as we have seen, this they could not do when inquiry of the possessor would certainly have disclosed that the respondent was in possession of the easements and claiming under the recorded grants, which on being read would have disclosed everything of which the appellants here claim to have been ignorant, including the restrictions upon use which the trial court found they violated by building their building on respondent's rights of way. ■ As to the finding that they had no actual knowledge of the instruments it must be construed in the light of the foregoing authorities as amounting to no more than a finding that they did not see the grants or the record thereof: for the knowledge with which they are charged is the knowledge they would have gained had they pursued the inquiry required of them. And such knowledge would have been actual when gained by inquiry. The foregoing amply supports the challenged findings, even assuming, as appellants contend, that, platting the record descriptions of the rights of way and of appellants' lot, the rights of way would appear not to cross the lot. This is so because it is not necessary in view of what has been said to depend upon constructive notice by record in the situation portrayed here.

Appellants contend there is no support for the court's finding that their building obstructed respondent in the use of and passage over its rights of way and in the maintenance of its power lines. But respondent's rights included the right to have the land embraced in its rights of way kept free of buildings. ■ It requires no testimony to show that putting a building where appellants put theirs is an obstruction to respondent's use and an encroachment upon respondent's rights. Certainly passage over the land embraced within the rights of way would not be as free with the building there as if it were not there. Equally certain is it that the dangerous proximity of building and wires is an obstruction to use.

■ Appellants contend that the holding of this court on the previous appeal constitutes the law of the case and in developing this contention they begin by citing authorities to the effect that where evidence on a retrial shows the averments of an answer to be true the decision of an appellate court on a former appeal on demurrer to the answer is the law of the case. The rule has no application and the contention cannot be sustained for the reason that allegations of essential facts, which we held would support a judgment for defendants if true, were held at the trial to be untrue. Contrary to the allegations of the answer, the evidence showed and the court found that the plaintiffs had constructed their building upon respondent's rights of way and beneath respondent's wires, and that appellants were charged with full knowledge of the context of the easement grants, including the declaration therein that the grantors would neither build nor permit the building of any structures upon the rights of way. The answer pleaded that the respondent had knowledge during the construction of appellants' building that they were building it in violation of respondent's rights and respondent made no objection thereto until the building was completed. The trial court found these allegations to be untrue and the record supports the finding. The only evidence of knowledge on the part of respondent is sought to be inferred from evidence that the rights of way were patrolled every 4 to 6 weeks by employees of respondent. But there was no evidence that these employees had any duty to report or did report to respondent concerning the progressing encroachments by appellants. The trial court was free to conclude that such knowledge was not possessed earlier than when, just before the completion of the building, the respondent asserted its rights, stopped the construction, and began suit.

■ Appellants contend that the covenants contained in the easement grants regarding buildings on the rights of way do not run with the land. We think that appellants misconceive the nature of the so-called covenants. Strictly speaking, they are not covenants at all, but are statements of the servitudes placed upon the grantor's land as part and parcel of the easements created by the grants. True, they are stated in the form of covenants, but when the grants are considered as a whole it is clear that these covenants are descriptive of the servitudes created and are not mere covenants. The right to have the land contained within the

boundaries of the rights of way remain free of buildings was germane to the main purpose of the right to erect and maintain the transmission lines. ██ "Easements may be created by contract or covenant; such agreements are grants in effect. . . . The precise form or nature of the covenant or agreement is not material. It is not even essential that it should run with the land; . . . ." (28 C.J.S. "Easements" 682-683.) Furthermore, treating these parts of the grants as covenants they clearly created servitudes enforceable in equity. ██ " 'If the owner of land enters into a covenant concerning the land, concerning its uses, subjecting it to easements or personal servitudes and the like, and the land is afterwards conveyed or sold to one who has notice of the covenants, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it; and it makes no difference whatever with respect to this liability in equity whether the covenant is or is not one which "in law runs with the land." ' " (*Richardson* v. *Callahan*, 213 Cal. 683, 687 [3 P.2d 927], quoting the foregoing from Pomeroy's Eq.Jur. 2d ed., §§ 688, 689.)

██ Finally, appellants contend that the trial court abused its discretion in issuing its mandatory injunction requiring the removal of their building from respondent's rights of way, which removal could only by accomplished by destroying the building. They argue that this was a proper case for weighing relative hardships; that when the relative hardships between granting and denying the mandatory injunction be considered the trial court should, as a matter of law, have withheld its injunctive relief. In our former opinion we adopted this view. We granted a rehearing in order to further consider the matter. After such consideration we have concluded that the trial court did not abuse its discretion in ordering the appellants' building removed.

██ It is settled law that a court of equity will in a proper case award a mandatory injunction for the protection and preservation of an easement, including, where that remedy is appropriate, an order for the removal of an obstruction already erected; but, as is generally the case, where the extraordinary remedy of mandatory injunction is asked the trial court is vested with a judicial discretion as to whether it will grant such relief or on the contrary will withhold it and relegate the parties to legal remedies. (*Clough* v. *W.*

*H. Healy Co.,* 53 Cal.App. 397, 400 [200 P. 378] ; see, also, *Wright* v. *Best,* 19 Cal.2d 368, 386 [121 P.2d 702].) In short, where the right to relief has been made out in such a case as this and injunctive relief is asked, there is usually posed a further question of the appropriateness of such relief. ■ The matter is treated substantially as follows in Restatement of the Law of Torts, chapter 48, sections 933-951, inclusive : The availability of injunction against a committed tort depends upon the appropriateness of this remedy as determined by a comparative appraisal of all the factors of the case including the following : The character of the interest to be protected, the relative adequacy to the plaintiff of injunction and of other available remedies such as damages; plaintiff's delay in bringing suit, plaintiff's misconduct, if any; the relative hardship likely to result to defendant if the injunction is granted and to plaintiff if it is denied; the interest of third parties and of the public, and the practicability of framing and enforcing the order or judgment. ■ The appropriateness of injunction is to be determined as of the time of the order or judgment unless special circumstances otherwise require. ■ In the instant case the property interests invaded by the appellants' encroachment were those of a public utility, the invaded property being dedicated to a public use. As to a comparison of the relative adequacy to the plaintiff of injunction and of the remedy of damages the following factors, among others, were presented for consideration : Encroachment was substantial, permanent and continuing, in gross violation of the plaintiff's rights of way; the situation created by appellants' building might well subject respondent to the alternative of corrective construction of its lines, or the risk of injury to third parties with resultant litigation. On the other hand, the damage alternative would be difficult to admeasure and would involve a large amount of speculation, as even corrective measures, such as raising the wires, could easily involve inconvenience and expense in future maintenance. In respect of plaintiff's delay in bringing the suit as one of the factors to be determined in considering the appropriateness of an injunction the trial court had, as we have held, found that plaintiff had not been guilty of any delay and this finding was supported by substantial evidence. The same can be said as to the factor of plaintiff's misconduct, of which the trial court had found it to be free. As to the relative hardship likely to result to appellants if injunction

be granted and to respondent if it be denied the situation was this: Plaintiff had proved that a tort had been committed which involved a permanent and substantial encroachment upon its rights of way. The responsibility for this encroachment was entirely that of the appellants. This wrongdoing of appellants was not in the nature of innocent mistake since both, when they purchased their property and when they constructed their building, were charged with knowledge of the respondent's rights and when, before beginning construction, their attention was specifically directed to the dangerous situation they would be creating if they built their building as planned, their response was to the effect that respondent was in fact trespassing upon the appellants' property, had no right to have its wires running across that property and that if hazard arose it would be for the respondent to remove it by taking corrective action on its own responsibility.

Under all the circumstances we think that the trial court was within the bounds of its legal discretion when, in view of the factors involved, it determined that mandatory injunction constituted the appropriate remedy.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied February 27, 1953, and appellants' petition for a hearing by the Supreme Court was denied March 30, 1953.