William J. WINEBERG, Plaintiff,

v.

Mary K. MOORE et al., Defendants.

No. 34863.

United States District Court
N. D. California, S. D.
April 29, 1961.

As Amended June 22, 1961.

Seitz, Easley & Whipple, Portland, Or., Stark & Champlin, Oakland, Cal., for plaintiff.

Ernest O. Meyer, San Francisco, Cal., for defendants Natural Resources, Inc., A. K. Wilson and James C. Rodger.

David B. Fyfe, San Rafael, Cal., for defendant Joseph Kejr.

Darling, Shattuck & Edmonds, Los Angeles, Cal., for defendants Construction Engineers, Inc. and Mendocino Logging Co.

OLIVER J. CARTER, District Judge.

This is an action by William J. Wineberg, a citizen of Washington, for quiet title and other relief upon 880 acres of timber land in Humboldt County, located in northern California. The amount in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and is between citizens of different states; therefore, jurisdiction is established on the basis of diversity of citizenship as provided by Title 28 U.S.C. § 1332. The real property and transactions critical to the disposition of this matter occurred in California, and it is deemed that California law is controlling. See Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Wineberg alleges that he purchased the property from O. O. Barker in May, 1948, for $6,000, but he failed to record his deed in Humboldt County until May, 1951. In the interim Barker, the seller, made a contract for the sale of the timber on the land to the defendant, Construction Engineers, which contract was recorded in 1950; in 1951 Barker sold the property again, deeding it this time to the defendant, Natural Resources, Inc., and this deed was also recorded before the Wineberg deed. Throughout this period, several judgments were obtained against O. O. Barker, and some of these judgment creditors are also defendants.

At the outset, this Court must resolve the difficult factual question of whether or not Wineberg ever actually purchased the property from Barker. It is urged that the $6,000 advanced to Barker was intended as a loan, with the deed given to Wineberg serving only as security for the loan.

The evidence shows that prior to May 22, 1948, the date on which Barker delivered the deed to Wineberg in Portland, Oregon, that Wineberg was negotiating with an Oregon firm, the Weinert Lumber Co., for the sale of some timber owned by Wineberg in Oregon. Wineberg's testimony indicated that, contemplating both the purchase of the California property from Barker, and also the sale of his Oregon timber to the Weinert Lumber Co., he wanted to unite both transactions into a like-for-like trade and thus avoid payment of taxes on the gain realized upon the sale of the Oregon timber. Before this proposed transaction was consummated, however, Barker came to Portland on May 22, 1948, delivered the deed granting the property

from him directly to Wineberg, and received Wineberg's check for $6,000. It appears that Wineberg at that time wrote this notation on the check:

"In full, 880 acres, Humboldt Co. Calif."

However, lines have been drawn through this notation so as to partially obliterate it, and the superimposed word "Loan" was written over it. Wineberg's check stub for this check has the word "Loan" entered thereon, and his books show that on that day he made a loan to Barker of $6,000. Three days later, Wineberg executed a bill of sale to Weinert Lumber Co. for his Oregon timber, and this document recites that the timber is transferred to Weinert Lumber Co. in trade for timber located in California. Two days later, on May 27, 1948, this unusual transaction occurred: Barker returned to Portland, and Wineberg delivered to him a second check for $6,000 from Weinert Lumber Co. and naming Barker as payee. Weinert Lumber Co. treated its check to Barker, to whom it was a stranger, as payment to Wineberg for the Oregon timber he transferred to Weinert Lumber Co., and Wineberg entered the $6,000 check from Barker to him as payment of the loan for the same amount he had made to Barker five days previously.

The defendants, seeking to defeat Wineberg's claim of absolute ownership in the property, insist that these loan indications, entered by Wineberg's own hand, show that Wineberg actually loaned Barker $6,000, and that therefore he only acquired a security interest in the land. As Barker still wound up with $6,000, no part of which was ever returned to Wineberg, this would negate the idea that the parties intended a loan instead of a sale. Paradoxically, Barker himself is of little assistance. For seven years and up to the time of trial, he had assumed that he had sold the land to Wineberg, even endeavoring to straighten out Wineberg's title for him when he complained that some of the defendants were removing timber from the land. At the trial, Barker's best recollection was that this was a loan transaction.

The question to be ascertained is whether or not the parties intended this deed to be a security device, or to convey an absolute estate as the deed purported to do. See Greene v. Colburn, 160 Cal. App.2d 355, 325 P.2d 148. The deed from Barker to Wineberg purported to convey a fee simple absolute, but "a deed absolute on its face may in equity be shown by parole evidence to have been intended as security for a debt, and hence only a mortgage." Anglo-Californian Bank v. Cerf, 147 Cal. 384, 388, 81 P. 1077; see also § 2925 Civil Code of California; Sherman v. Panno, 129 Cal. App.2d 375, 277 P.2d 80; Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583. In the Sherman case, cited supra, the court stated at page 388 of 129 Cal.App.2d, at page 88 of 277 P.2d, that:

"* * * in order to determine the true character of the transaction, the trial court should consider all the facts and circumstances surrounding the transaction, including the conduct of the parties before and after."

■■ A deed purporting to convey all interests that a grantor possesses is presumed to do just that, and not to create a mere security interest. See Gronenschild v. Ritzenthaler, 81 Cal.App. 2d 138, 183 P.2d 720. The establishment of a deed absolute as a security device requires clear and convincing proof. Mahoney v. Bostwick, 96 Cal. 53, 30 P. 1020; Kohn v. Parent, 174 Cal. 570, 163 P. 1008. Furthermore, this burden of proof rests with the party attempting to alter the plain terms of the deed. Woods v. Jensen, 130 Cal. 200, 62 P. 473.

■ The circumstances surrounding the deed from Barker to Wineberg is not without doubt as to the true intent of the parties in respect to the interest created, but this Court is not persuaded that this transaction was merely a security device to secure a loan to Barker. And since the evidence of a loan was

not clear and convincing, it follows that this deed must stand as a conveyance of the fee simple absolute.

This Court must now ascertain whether or not failure to record by Wineberg makes his legal title subject to the prior recordings by Construction Engineers and Natural Resources, Inc., or whether these defendants were put on notice by conduct of Wineberg so as to preclude a subsequent good faith purchase of any interest in the property by said defendants.

Construction Engineers seeks to defeat Wineberg's right to the timber on the property by virtue of its 1950 contract with Barker for the sale of the timber on the land, which contract was recorded prior to the time that Wineberg recorded his deed. All other defendants who actively participated in the trial and who filed briefs seek to defeat Wineberg's title on the additional ground of Barker's 1951 deed of this property to Natural Resources, Inc., said deed being recorded subsequent to the timber contract of Construction Engineers, but before the deed to Wineberg. Wineberg's superiority of title as against all defendants named rests upon the outcome of the issues between Wineberg, Construction Engineers, and Natural Resources, Inc., respectively, since there is no other assertion of a superior title being made.

 It must first be established that the timber contract of Construction Engineers was such an interest as to be within the scope of the recording statute. The pertinent section is § 1214 of the California Civil Code which provides:

"Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance

shall have been duly recorded prior to the record of notice of action."

Section 27280 of the California Government Code provides:

"Any instrument or judgment affecting the title to or possession of real property may be recorded pursuant to this chapter."

In Kirsch v. Barnes, D.C.N.D.Cal.1957, 157 F.Supp. 671, 673, affirmed 9 Cir., 263 F.2d 692, the court stated:

"Furthermore, it has been specifically held that the recordation of a contract involving the right to remove timber within a specified period of time is not only proper, but will serve to constitute constructive notice to subsequent purchasers."

And in 1957 the State of California added section 1220 to the California Civil Code, which provided for recordation of instruments affecting growing timber, and section 1220 adopted the provisions of the recording statutes which related to conveyances of land thus including the tenor of section 1214. It is true that section 1220 does not specifically apply here because the transactions in this case antedated its enactment, but the section did include the following paragraph before it was deleted by amendment in 1959:

"In enacting this section, it is the intent of the Legislature to remove any possible ambiguity which may exist in the present law relating to the recordation of certain documents and to codify the existing law without change or addition, thus recognizing specifically by statute the unvarying practice of county recorders for many years." See Statutes 1957, c. 1937, p. 3467, § 1.

This statement by the Legislature does not establish that a timber contract was a recordable document prior to the 1957 amendment, but it does negate an argument that the Legislature intended to change the law by this enactment. This statement at least establishes that the Legislature considered such an interest recordable, but thought that a legisla-

tive expression was necessary to prevent further argument. This Court is persuaded that the timber contract in question was a recordable document, and, as such, if the vendee was without notice at the time of purchase and recordation of any outstanding equities, his claim would be superior to that of Wineberg.

The critical factual question for resolution is whether or not Wineberg's possession was sufficient to impart notice to Construction Engineers, Inc. and Natural Resources, Inc. which would prevent them from establishing a superior right pursuant to Section 1214 of the Civil Code of California (quoted supra).

■ The common law rule was that once a grantor conveyed all his interest in a parcel of real property he could create no further rights in the property in a third person absent any elements of estoppel. The recording statutes have altered this rule for it is now possible for a grantor to make a second conveyance divesting the first grantee so long as the second grantee pays a valuable consideration, records first, and is in good faith. The California recording statute requires the second purchaser to be without notice, actual or constructive, of the interest of the prior purchaser. A deed that is not recorded is nevertheless valid between the parties thereto, and persons who have notice thereof. § 1217 Civil Code of California. Section 18 of the Civil Code of the State of California defines notice as follows:

"1. Actual—which consists in express information of a fact; or,
2. Constructive—which is imputed by law."

Section 1107 of the Civil Code of the State of California provides:

"Every grant of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or incumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded."

■■ A party purchasing real property from a title holder of record where a third person is in possession is presumed to purchase "with full notice of all the legal and equitable rights in the premises of such party in possession and in subordination to these rights, and this presumption is only to be overcome or rebutted by clear and explicit proof on the part of such purchaser, or those claiming under him, of diligent, unavailing effort by the vendee to discover or obtain actual notice of any legal or equitable rights in behalf of the party in possession." Pell v. McElroy, 36 Cal. 268, 271. It is incumbent upon a subsequent purchaser to ascertain who is in possession. Scheerer v. Cuddy, 85 Cal. 270, 271, 24 P. 713. In absence of actual inquiry a person is still chargeable with the notice imparted by possession—such notice is akin to, if not equivalent to constructive notice.

California Civil Code § 19 provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

In Pacific Gas & Electric Co. v. Minnette, 1953, 115 Cal.App.2d 698, 705, 252 P.2d 642, 646, the court applies the following rule:

" 'Possession of land is notice to the world of every right that the possessor has therein, legal or equitable; it is a fact putting all persons on inquiry as to the nature of the occupant's claims.' (39 Am.Jur. 242.)"

The same court approvingly quoted from 66 C.J.S., Notice § 11, pp. 646, 647, as follows:

" 'The presumption is that inquiry of the possessor will disclose how and under what right he holds possession, and, in the absence of such inquiry, the presumption is that, had such inquiry been made, the

right, title, or interest under which the possessor held would have been discovered. The notice which the law presumes has been held to be actual, and not merely constructive, notice. Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property, and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such knowledge as would be gained by examination of the public records.' * * *. The foregoing rules are applied by California courts." 115 Cal.App.2d 705–706, 252 P.2d 646.

Thompson in his treatise on real property states that:

"It is held that the law will impute to a purchaser all information which would be conveyed to him by an actual view of the premises." Thompson on Real Property (permanent edition), Vol. 8 § 4464 at page 318.

This "view of the premises" is by actual visit to the property and not by looking at an aerial map of the terrain nor by flying over the property, even if this is customary with some persons who do not conduct themselves in a prudent manner. This approach may be suitable in an inaccessible terrain, but not as here, where the property is readily accessible by automobile.

The possession required to impart notice to a subsequent purchaser in California must be "open, notorious, exclusive and visible, and not consistent with the record title." Randall v. Allen, 180 Cal. 298, 303, 180 P. 941. And in Gibbons v. Yosemite Lumber Co., 190 Cal. 168, 172, 211 P. 4, 5, it is further stated:

" ' * * * the acts of dominion must be adapted to the particular land, its condition, locality, and appropriate use.' "

The burden of proof as to what acts of dominion will suffice to establish notice by possession rests with the person claiming such possession. Dreyfus v. Hirt, 82 Cal. 621, 23 P. 193.

The acts of dominion exercised by Wineberg do not present the strongest case possible in his favor, but, nevertheless, in viewing all the acts and circumstances surrounding the timber contract from Barker to Construction Engineers, Inc. and the conveyance from Barker to Natural Resources, Inc., these acts were sufficient to prevent these defendants from claiming that they purchased their respective interests "in good faith".

This 880 acre parcel of real property is primarily suited to logging operations and secondarily as a recreational facility, with the prime attraction consisting of hunting and fishing. At the time Wineberg purchased the property, there was a dwelling suitable for residence or summer recreational activities and a garage. These buildings were also present on the property at the time defendants consummated their respective transactions. A woven wire fence extended along two sides of the property, but it did not encompass the whole 880 acres. The road leading to the property was obstructed by a locked gate. There was a no trespassing sign posted upon the gate with Wineberg's name and Portland, Oregon, address.

Wineberg paid the taxes upon the property. He visited the property occasionally for recreational purposes, and friends of Wineberg's also utilized the property for like purposes. The occupancy by Wineberg's guests is deemed that of Wineberg for the purpose of establishing possession, for if an inspection of this property had been made such persons would have identified Wineberg as owner. Further indicia of ownership was present in the form of personal property located in the residence structure identifiable as Wineberg's. There were several no trespassing signs in the near vicinity of the dwelling, and along a trail leading to the stream. These signs all identified Wineberg as claiming an interest in the property inasmuch as he was advising all other persons not to trespass.

The fact that the whole of the property was not enclosed does not prevent Wineberg's possessory acts from extending over the whole 880 acre parcel. As stated in Andrus v. Smith, 1901, 133 Cal. 78, 80, 65 P. 320, 321:

"It has been held that where the property is in some way subjected to the will and control of the claimant, that an inclosure is not always necessary."

And at page 81 of 133 Cal., at page 321 of 65 P. the same court said:

"And where a party enters, under color of title, and has actual possession of a part of the whole tract, he has constructive possession of the whole."

Another factor that lessens the need for a complete enclosure is that the point of recognized ingress and egress to this property was by a road that led to the dwelling, and the dwelling and surrounding area was posted with Wineberg's no trespassing signs. Anyone inspecting this property would have begun at this location and be made immediately aware of the fact that some third person was exercising rights therein. A prudent person would have made an inquiry as to the rights of this party.

The use of this property from 1948 through 1950 and 1951 (the critical years as to notice) was occasional, but this, nevertheless, was an adaptation of use in accordance with the secondary utility of the parcel; namely, recreational purposes such as hunting and fishing. This use has particular meaning when considering the fact that timber, although considered a crop, does not ripen in a given year as far as a logger is concerned, nor is there any demand that it be harvested at a particular time, other than restrictions as to access because of weather conditions. It seems wholly unrealistic to say that logging activities would be the only acts that would be sufficient exercise of dominion over this property to put these defendants on notice of Wineberg's title. This Court does not require that kind of showing, which

view is consistent with the controlling California decisions.

The recording system is intended to make secure real property transactions and to protect bona fide purchasers for value from secret liens. This does not mean that a subsequent purchaser may close his eyes to everything but the record title. Beach v. Faust, 2 Cal.2d 290, 40 P.2d 822.

The duty of inquiry is made particularly acute under the facts of this case as a result of the relationship of the defendants to Barker. It was contended, but the evidence failed to sustain a joint venture between Barker and defendants. But the negotiations of these defendants with Barker for the respective interests conveyed or attempted to be conveyed was such that prudence dictated diligent examination of the properties under negotiation. For example, Construction Engineers, Inc., negotiated a contract to purchase a considerable amount of timber described merely as that property of record in Humboldt County in Barker's name, which property, in part, was covered by holding agreements, and other defects which clouded his title. Construction Engineers, Inc., had knowledge of these infirmities. This kind of atmosphere dictates caution. This Court does not say that Construction Engineers could not be a bona fide purchaser, but, considering the possessory acts exercised by Wineberg plus the conditions existing at the time this timber contract was negotiated, this Court deems that Construction Engineers, Inc., did not act "in good faith."

As an example of how other courts have construed the negotiations leading to this contract between Barker and Construction Engineers, Inc., but involving different property and different parties, see Kejr v. Natural Resources, Inc., 166 Cal.App.2d 571, at page 574, 333 P.2d 93, at page 95, where the court said:

"It appears that Barker was a licensed real estate broker whose principal business was negotiating sales of timber lands to logging compa-

nies. His method of operation was to have owners quitclaim their property to him subject to holding agreements similar to the holding agreement executed between himself and Hopkins. He would then endeavor to sell the timber or the land in large blocks rather than in the smaller units covered by the individual transactions between himself and small owners. When representatives of Construction Engineers, Inc., were negotiating with Barker for the purchase of the timber on the 7,000 acres covered by the contract later executed by Barker, they had before them many of these holding agreements and in many instances used them for the purpose of describing parcels of the lands included in the contract with Barker. It appears also that Barker told them of the existence of the holding agreements and some reference was made in the contract between Construction Engineers, Inc., and Barker to the effect that some of the lands were under holding agreements."

This same condition existed as to Natural Resources with even more force. Natural Resources was dealing with Barker at a time when his private difficulties were enlarged by a pending criminal matter in this Court. They were purchasing many parcels of real property which were allegedly free of outstanding equities. Yet, the rule here was clouded titles and not clear titles, and this fact was known to Natural Resources. This 880 acre parcel was only one of many parcels conveyed. No inspection of this property was made when in fact the property was readily accessible. It may be a practice of some purchasers in the Humboldt County area to view the property by airplane, or through the use of aerial maps, but this does not alter the rule that a subsequent purchaser is chargeable with notice of the equities of a possessor whose possession is inconsistent with title of record as in this case.

Under the conditions existing when the defendants negotiated their respec-

tive deals with Barker, they were bound to inspect the property. In the absence of such inspection, they are chargeable with all facts such inspection would have revealed, as well as with facts discoverable by inquiry suggested by such inspection. Such inquiry would have revealed Wineberg's fee simple interest. Good faith demanded this inquiry by these defendants.

In view of this holding it is unnecessary to pass on Wineberg's other contentions.

Judgment is awarded to plaintiff on the issue of title. The issue of damages may be set down for hearing upon the request of any of the parties.